

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0307-09

**RONALD WILSON, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTH COURT OF APPEALS
### BEXAR COUNTY

COCHRAN, J., delivered the opinion of the Court in which PRICE, WOMACK, JOHNSON AND HOLCOMB, JJ., joined. MEYERS, J., filed a dissenting opinion. KEASLER, J., filed a dissenting opinion in which KELLER, P.J. and HERVEY, J., joined. HERVEY, J., filed a dissenting opinion in which KELLER, P.J. and KEASLER, J., joined.

### OPINION

In this case of first impression, we must decide whether article 38.23 of the Code of

Criminal Procedure[1] bars the admissibility of a confession if the interrogating officer

fabricates documentary evidence in violation of Texas Penal Code section 37.09[2] and uses

---

[1] TEX. CODE CRIM. PROC. art. 38.23 ("No evidence obtained by an officer . . . in violation of . . . [the] laws of the State of Texas . . . shall be admitted in evidence against the accused on the trial of any criminal case.").

[2] TEX. PENAL CODE § 37.09 ("A person commits an offense if, knowing that an investigation or official proceeding is pending or in progress, he . . . makes, presents, or uses any

it to persuade a suspect to confess.[3] We agree with the San Antonio Court of Appeals, which held that (1) the interrogating officer violated the law by fabricating a forensic report falsely stating that appellant's fingerprints were found on the magazine clip of the murder weapon;[4] and (2) the trial judge erred in denying appellant's motion to suppress.[5]

## I.

On January 1, 2006, appellant called 911 to report that he had found a man's body while walking home with his son. When San Antonio police responded, they found the body of Amos Gutierrez, who had been killed with a single gunshot. The magazine clip for a pistol was found near his body. When police received information implicating appellant in the murder, they arrested him on unrelated misdemeanor warrants. After appellant confessed on videotape to the shooting, he was charged with capital murder. He filed a motion to suppress his confession, contending that his confession was involuntary and obtained in violation of the federal and state constitutions as well as Texas law.

## A.    Proceedings in the Trial Court.

---

record, document, or thing with knowledge of its falsity and with intent to affect the course or outcome of the investigation or official proceeding.").

[3] The State's sole ground for review reads:
Did the Court of Appeals err in equating the use of deception in the creation of a document for interrogation purposes with a violation of TEX. PENAL CODE § 37.09?

[4] *Wilson v. State*, 277 S.W.3d 446, 447-49 (Tex. App.—San Antonio 2008) ("The facts presented at the motion to suppress hearing and the plain language of section 37.09 lead to the conclusion that the detective violated section 37.09.").

[5] *Id.* at 447.

At the hearing on appellant's motion to suppress, Detective Roberts admitted that he had fabricated a forensic lab report to convince appellant to respond to his questioning. The report stated that appellant's fingerprints were found on the magazine clip retrieved from the crime scene, but, in fact, no legible prints were found on the clip. Det. Roberts testified that he used an old crime lab report as a template to create the false document on his computer. He explained that he obtained a preexisting report, changed the heading to "Bexar County Criminal Investigation Laboratory," and created the following text:

> Results: Examination of Item 1 revealed the Two Latent Prints lifted from the Firearm Magazine belong to those of Ronald Wilson, a Black Male with the date of birth 11-13-84, SAPD 0436899, [Bexar County Sheriff's Office] 0401670, DPS 6548907, FBI 393432VB3, SID 0811325, Fingerprint Class 9I15I0013, 028WMMI.

When he entered the interrogation room, Det. Roberts showed the fabricated document to appellant in the hope that appellant would rely on it and give him incriminating information. He began the interview at 10:02 p.m. by asking appellant if he had touched anything at the murder scene. Appellant repeatedly denied doing so. Det. Roberts then handed appellant the fake report at 10:13 p.m., and explained that his fingerprints were on the gun clip. Appellant studied the report for a moment, shaking his head in apparent disbelief. At 10:15 p.m., Det. Roberts again reminded appellant that "they had his fingerprints" and listed other incriminating evidence. At 10:17 p.m., appellant interrupted and said that he didn't know how his prints wound up on the clip. At 10:20 p.m., Det. Roberts again recounted all of the incriminating evidence, listing the fingerprint report first.

At 10:24 p.m. Det. Roberts stated that he "can't get over the prints":

> Let me remind you, I've got that report. Those guys are experts. They're like DNA experts. They're like experts. What they say is the truth, and we got you.

At that point appellant put his hands on his head, looked down, and said, "Okay. Okay."

Immediately thereafter he admitted that he had shot Mr. Gutierrez.[6]

At the hearing, appellant questioned Det. Roberts about section 37.10, tampering with a governmental record, and asked the detective to read that provision aloud: "A person commits an offense if he makes, presents, or uses any record, document, or anything with knowledge of its falsity and with the intent that [it] be taken as a genuine governmental record." Det. Roberts admitted that he created a document that he knew to be false, and he wanted appellant to rely on it to give him information.

Appellant then argued that Det. Roberts's conduct violated section 37.10 of the Penal Code. Because the officer's conduct violated a penal law, the Texas statutory exclusionary rule, article 38.23, barred admission of appellant's confession.[7]

---

[6] Appellant first claimed that he went to Mr. Gutierrez's apartment to sell him a gun, but, when he pulled the gun out of his pants, it fired. His second version was that the victim tried to buy crack cocaine from him. Appellant told him that he did not have any, but he offered to sell Mr. Gutierrez the gun instead. When appellant pulled it out, the gun misfired. In his third version, appellant said that he was at a friend's apartment when the victim knocked on the door, asking to buy crack. Appellant stepped outside and decided to rob Mr. Gutierrez, but when he pulled the gun from his pants and pointed it at Mr. Gutierrez, it accidentally fired.

[7] Defense counsel contended that

> whatever admissions [appellant] made [are] a direct result of that [report]. And so he uses it in the beginning or midway through it and he uses it over and over again each time leaning on the weight of what this person should give to that document. I mean, when you go to the point of knowing that there is not a fingerprint on a pistol magazine or the magazine of this pistol, he knows that in advance. I drew

At a later hearing on the same motion, defense counsel, the prosecutor, and the trial judge discussed the distinctions between the use of deception and the use of a fabricated police fingerprint report.[8] Defense counsel repeatedly argued that Det. Roberts had violated Texas penal laws. The trial judge then asked the prosecutor, "So what do you have to say about his argument that this is a violation of the criminal laws of the State of Texas?" The prosecutor said that he did not think that fabricating "a fingerprint result sheet from a crime lab would be considered a governmental record as defined in 37.10." The trial judge expressed doubt about whether the forged document was actually a "government record"

---

that out of him and yet he still goes and . . . writes a report as if he's Ed Love [the fingerprint examiner]. I know he did that without Ed Love's permission. And . . . he uses it as a false report. And that I think that – I don't think the case is on deception-envisioned police officers or detectives creating false government documents to get a confession. So I think his confession or statement, I should say, based upon that, he's a victim of coercion, and it certainly was involuntary. And it's in violation of 38.22. And, Judge, it's also in violation of 38.23 where it states that any law officer who breaks the law in order to get evidence, the exclusionary rule, I think that's applicable here. Evidence not to be used – it's Article 38 – no evidence obtained by an officer or other person in violation of any provisions of the Constitution or the laws of the State of Texas or the Constitution or laws of the United States of America shall be admitted into evidence against the accused on the trial of any criminal case. So I think he violated the law in order to get evidence against this man.

[8] Defense counsel noted that, "in regards to deception, I mean, obviously, as I said the other day, I think the Court is aware that the Supreme Court has said that police officers can use deception. The question that I have, Judge . . . is when do we draw the line? I mean, here's a case where . . . it's not even an inference from the evidence that there's a fingerprint. This detective says . . . I know there are not any fingerprints. . . . . [T]hen he uses his handiwork, and that is the fabricated police report. In response to the judge's inquiry about whether the Supreme Court approves of this type of deception, counsel stated that Det. Roberts admitted "to breaking a law of the State of Texas that I clearly pointed out the other day in order to get this man to confess to a crime. So, I'm not sure he can . . . break a law that we're all bound to and then hide behind that because he's getting him to confess to a crime."

under the statute, but he acknowledged that the use of the "report" was clearly "a turning point in the interrogation that was going on" and that it led to "his final statement and their finding of the weapon and everything – clearly." The judge concluded that "whether or not I think that's appropriate behavior, the Supreme Court doesn't seem bothered by that." Ultimately, the trial judge ruled that the confession was admissible, and he made oral findings of fact and conclusions of law.[9] After his motion to suppress was denied, appellant pled nolo contendere to the lesser-included offense of murder and was sentenced to twenty-eight years in prison.

**B.      Proceedings in the Court of Appeals.**

On appeal, appellant argued that his confession was inadmissible for a number of reasons, including the federal and state constitutions and article 38.23. He based his article 38.23 argument on the violation of both Texas Penal Code section 37.09, tampering with evidence, and section 37.10, tampering with a governmental record. The State did not object that appellant had failed to raise the section 37.09 argument in the trial court.

The court of appeals reversed and remanded. Based on Det. Roberts's admission that

---

[9] Those findings included the following:
The fact that the detective used a false document and, in fact, deceived Mr. Wilson about the kind of evidence that he had. He didn't have the fingerprints, he had made up a false fingerprint report which purported to be from a fingerprint examiner – it wasn't. It was something that he had just made up. That's clear. It was a lie. And whether or not I think that's appropriate behavior, the Supreme Court doesn't seem bothered by that. And I've got to follow the law that they set down. So, they say that the criminals can use deception; the cops can use deception. They're not bothered by it, so, it's admissible.

he "knowingly creat[ed] the false document with the intention that defendant would consider the document as genuine and confess to shooting the victim," it concluded that the trial court had erred in denying appellant's motion to suppress.[10] It held that the facts presented at the hearing, in light of the plain language of section 37.09, showed that Det. Roberts's conduct violated that statute, and therefore suppression of appellant's confession was required under article 38.23.[11] The State petitioned this Court to review only the question of whether the court of appeals erred in its holding concerning whether Det. Roberts violated section 37.09 by using a fabricated document, and whether that statute is related to the purpose of the Texas statutory exclusionary rule.[12] The State does not now complain, and never has complained, that appellant failed to raise his section 37.09 argument in the trial court, although it could have done so in its petition for discretionary review.[13] Under these circumstances, we conclude that there is no issue before us concerning the propriety of the

---

[10] *Wilson v. State*, 277 S.W.3d 446, 449 (Tex. App.—San Antonio 2008).

[11] Because of its disposition on the basis of section 37.09, the court of appeals did not address any of appellant's other issues, including the violation of section 37.10 or the alleged constitutional violations. *Id.* at 450 n.5.

[12] The State's Summary of the Argument is as follows:
Because deception and trickery is a lawful method of investigation, the detective did not violate Texas Penal Code Section 37.09 by creating a fictitious lab report during appellee's interrogation. Further, section 37.09 is unrelated to the purpose of the exclusionary rule. Therefore, article 38.23(a) may not be invoked. However, assuming *arguendo*, the exclusionary rule could be properly invoked, the detective did not violate section 37.09 because he lacked the required mens rea.
State's Brief at 3.

[13] *See Smith v. State*, 70 S.W.3d 848, 850 (Tex. Crim. App. 2002); *Wamget v. State*, 67 S.W.3d 851, 853 n.4 (Tex. Crim. App. 2001).

court of appeals's reliance on section 37.09, tampering with evidence, as opposed to section 37.10, tampering with a governmental record, in resolving appellant's Texas exclusionary statute claim.[14]

We therefore turn to the merits of the question before us: does article 38.23 of the Texas Code of Criminal Procedure bar the use of evidence obtained in violation of the penal statute of tampering with evidence?

## II.

### A.    Standard of Review.

In reviewing a trial court's ruling on a motion to suppress, we apply a bifurcated standard of review.[15]    Although we give almost total deference to the trial court's determination of historical facts, we conduct a *de novo* review of the trial court's application of the law to those facts.[16]  As the sole trier of fact during a suppression hearing, the trial

---

[14] *See Tallant v. State*, 742 S.W.2d 292, 294 (Tex. Crim. App. 1987) (plurality op.) ("the State must call to the attention of the court of appeals in orderly and timely fashion that an alleged error was not preserved"; "An appellant may not expect this Court to consider a ground for review that does not implicate a determination by the court of appeals of a point of error presented to that court in orderly and timely fashion"); *see also Farrell v. State*, 864 S.W.2d 501, 503 (Tex. Crim. App. 1993) ("to ensure that [this Court] reviews only decisions of the courts of appeals, we insist that the parties, in an orderly and timely fashion, provide the courts of appeals with the first opportunity to resolve the various issues associated with the appeal"); *Rochelle v. State*, 791 S.W.2d 121, 125 (Tex. Crim. App. 1990) (State failed to preserve alleged error for review in Court of Criminal Appeals when it first raised issue in motion for rehearing in court of appeals, which overruled motion without written opinion).

[15] *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000).

[16] *Id.*

court may believe or disbelieve all or any part of a witness's testimony.[17]  Furthermore, we examine the evidence in the light most favorable to the trial court's ruling.[18]  However, a trial court necessarily abuses its discretion if it refuses to suppress evidence that is obtained in violation of the law and that is, therefore, inadmissible under article 38.23.[19]

In this case, the historical facts are not in dispute.  We adopt the trial court's findings concerning these facts[20] and will view the evidence in the light most favorable to his ruling.  The issue in this case is one of pure law concerning the applicability of article 38.23.

**B.      Article 38.23 prohibits the admission of evidence obtained in violation of Texas penal laws related to gathering, creating, or destroying evidence.**

In 1925, the Texas Legislature enacted a state exclusionary rule that was based upon, but broader than, the federal exclusionary rule.[21]  Thus, the use of any evidence that would be barred by federal constitutional principles–as interpreted by the United States Supreme

---

[17] *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

[18] *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).

[19] *Erdman v. State*, 861 S.W.2d 890, 893 (Tex. Crim. App. 1993).

[20] Concerning Det. Roberts's use of the fabricated forensic report, the trial judge stated:

The fact [is] that the detective used a false document and, in fact, deceived Mr. Wilson about the kind of evidence that he had.  He didn't have the fingerprints, he had made up a false fingerprint report which purported to be from a fingerprint examiner–it wasn't.  It was something that he had just made up.  That's clear.  It was a lie.

[21] *See Miles v. State*, 241 S.W.3d 28, 35 (Tex. Crim. App. 2007) ("The Texas Legislature enacted an exclusionary rule broader than its federal counterpart"); *Pierce v. State*, 32 S.W.3d 247, 251 n.7 (Tex. Crim. App. 2000) ("The statute that was the predecessor of the first sentence of Article 38.23 was enacted in 1925.").

Court–is barred under article 38.23, our state exclusionary rule.[22]  But article 38.23 prohibits

the use of a much broader category of "illegally obtained" evidence.[23]  It includes evidence

that is obtained in violation of Texas laws as well as that obtained in violation of the federal

and state constitutions.[24]  The underlying purpose of both the federal exclusionary rule and

article 38.23 is the same: to protect a suspect's privacy, property, and liberty rights against

overzealous law enforcement.[25]  As such, both exclusionary rules are substantive in nature,

as they provide a remedy for the violation of those rights.[26]

---

[22] Article 38.23(a) reads,
No evidence obtained by an officer or other person in violation of any provisions
of the Constitution or laws of the State of Texas, or of the Constitution or laws of
the United States of America, shall be admitted in evidence against the accused on
the trial of any criminal case.

[23] *See generally* GEORGE E. DIX AND ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL
PRACTICE AND PROCEDURE §§ 4.11-4.35 (2d ed. 2001) (discussing the distinctions between the
federal constitutional exclusionary law and the Texas statutory exclusionary rule; noting that
"Article 38.23 of the Code of Criminal Procedure imposes what is probably the broadest state
exclusionary requirement of any American jurisdiction.").

[24] *See Davidson v. State*, 25 S.W.3d 183, 186 n.4 (Tex. Crim. App. 2000) (article 38.23
mandates the exclusion of evidence that has been obtained in contravention of legal or
constitutional rights);  *Imo v. State*, 826 S.W.2d 714, 714 (Tex. App.—Texarkana 1992, no pet.)
(art. 38.23 is more protective of individual rights than the federal constitution).

[25] *Miles v. State*, 241 S.W.3d at 36 n.33; *Chavez v. State*, 9 S.W.3d 817, 822 (Tex. Crim.
App. 2000)  (Price, J., concurring); *Brick v. State*, 738 S.W.2d 676, 679 n.5 (Tex. Crim. App.
1987) (noting that article 38.23 and the federal exclusionary rule share a common purpose: "to
deter unlawful conduct on the part of law enforcement personnel and to close the doors of our
courts to illegally obtained evidence").

[26]  *Davidson*, 25 S.W.3d at 186 n.4; *see also Jackson v. State*, 968 S.W.2d 495, 499 (Tex.
App.—Texarkana 1998, pet. ref'd) (laws that invoke art. 38.23 exclusionary rule are "those that
protect rights and interests of citizens from infringement by the State"); *Johnson v. State*, 864
S.W.2d 708, 717-18 (Tex. App.—Dallas 1993) (by enacting art. 38.23, legislature provided legal
remedy for suspect whose statutory or constitutional rights had been violated), *aff'd*, 912 S.W.2d
227 (Tex. Crim. App. 1995).

Although the plain language of article 38.23(a) would suggest that evidence obtained in violation of *any* law must be suppressed, the State is correct in its assertion that article 38.23(a) may not be invoked for statutory violations unrelated to the purpose of the exclusionary rule.[27]   The primary purpose of article 38.23(a) is to deter unlawful actions which violate the rights of criminal suspects in the acquisition of evidence for prosecution.[28] Article 38.23(a) may not be invoked for statutory violations unrelated to the purpose of the exclusionary rule or to the prevention of the illegal procurement of evidence of crime.[29]

1.    *Texas Penal Code §37.09 prohibits police officers from using fabricated documents to affect the course of their investigations.*

The State argues that tampering with evidence is a crime whose purpose "is to prevent

---

[27] *See Lane v. State,* 951 S.W.2d 242, 243 (Tex. App.—Austin 1997, no pet.) (*per curiam*); *Carroll v. State,* 911 S.W.2d 210, 221 (Tex. App.—Austin 1995, no pet.) ("'It seems evident that the particular provision of the Constitution [sic] or laws which is violated in obtaining evidence must exist for the purpose of regulating the acquisition of evidence to be used in a criminal case.'") (quoting Judge Robert R. Barton, *Texas Search and Seizure,* § 2.0152 at 2-24 (1993)).

[28] *Carroll,* 911 S.W.2d at 221; *see also Chavez v. State*, 9 S.W.3d 817, 822 (Tex. Crim. App. 2000) (Price, J., concurring) ("the underlying theory of both the [federal] exclusionary rule and article 38.23 is the same: to protect a suspect's liberty interests against the overzealousness of others in obtaining evidence to use against them.").

[29] *See, e.g., Pannell v. State,* 666 S.W.2d 96, 98 (Tex. Crim. App. 1984) (violations of the Code of Professional Responsibility do not constitute a violation of the law within the meaning of article 38.23); *Roy v. State,* 608 S.W.2d 645, 651-52 (Tex. Crim. App. 1980) (violation of assumed name statute did not require suppression of evidence); *Reeves v. State*, 969 S.W.2d 471, 486-87 (Tex. App.—Waco 1998, pet. ref'd) (violation of TEX. CODE CRIM. PROC. art. 18.10, which requires a court order to remove property from the county in which it was seized, does not invoke article 38.23); *Lane v. State*, 95 S.W.2d at 243 (article 38.23 "may not be invoked for statutory violations unrelated to the purpose of the exclusionary rule"); *Stockton v. State,* 756 S.W.2d 873, 874 (Tex. App.—Austin 1988, no pet.) (violation of education code did not require suppression of evidence).

individuals from defrauding the government.  It is in no way related to the collection of evidence by police detectives." That is a mistaken understanding of the statute.  The purpose of section 37.09 is to maintain the honesty, integrity, and reliability of the justice system and prohibiting *anyone*–including members of the government–from creating, destroying, forging, altering, or otherwise tampering with evidence that may be used in an official investigation or judicial proceeding.[30]  Obstruction-of-justice offenses, such as tampering with evidence or government documents, address "the harm that comes from the [actor's] disobedience of the law–damage to the authority of the government; a lessening of the public's confidence in our institutions; public cynicism, fear, and uncertainty; and a social climate that is likely to lead to even greater disobedience."[31]  Public scandals involving police

---

[30] In 2009, the Texas Legislature increased the penalties for tampering "with a written governmental report of a medical, chemical, toxicological, ballistic, or other expert examination or testing of physical evidence" from a state-jail felony to a third-degree felony.  H.B. 1813, 81st Leg. R.S. ch. 73, § 1, 2009 Gen. Laws 118. In its Bill Analysis, the House Research Organization noted the discrepancy of penalties between tampering with evidence and tampering with a governmental document and stated,

> tampering with a government record of forensic analysis and tampering with evidence have the same harmful effects–they waste money and manpower, damage confidence in the criminal justice system, and result in wrongful convictions and acquittals.  The Penal Code should recognize the equally severe nature of these offenses by providing equally stringent penalties.

H.B. 1813 (bill analysis); *see also* Erin Murphy, *Manufacturing Crime: Process, Pretext, and Criminal Justice*, 97 GEO. L.J. 1435, 1440-41 (2009) (noting that the justification for obstruction-of-justice offenses "derives from a 'collective interest' that the people together hold in the integrity of the system overall, without regard to the effects on any particular victim or outcome of any single case.  Public institutions that permit lying, obstruction, and intimidation to go unchecked cannot maintain the confidence of the citizenry they superintend. All members of society therefore share an interest in preserving functional, healthy processes of criminal justice.") (footnotes omitted).

[31] Stuart P. Green, *Why It's a Crime To Tear the Tag Off a Mattress: Overcriminalization and the Moral Content of Regulatory Offenses*, 46 EMORY L.J. 1533, 1612 (1997); *see also State*

and "throw down" guns,[32] pool-chalk wrapped to look like cocaine used as evidence to

prosecute innocent people,[33] false offense reports,[34] and the like are not unheard of in this

_____

*v. Cayward*, 552 So.2d 971 (Fla. Dist. Ct. App. 1989). In *Cayward*, the Florida court of appeals held that the defendant's confession was inadmissible when a police officer fabricated two forensic laboratory reports and presented them to the defendant during the interrogation session, after which the defendant confessed. Among the reasons for prohibiting the use of manufactured documents to induce a confession, the Florida court explained,

> We think, however, that both the suspect's and the public's expectations concerning the built-in adversariness of police interrogations do not encompass the notion that the police will knowingly fabricate tangible documentation or physical evidence against an individual. Such an idea brings to mind the horrors of less advanced centuries in our civilization when magistrates at times schemed with sovereigns to frame political rivals. This is precisely one of the parade of horrors civics teachers have long taught their pupils that our modern judicial system was designed to correct. Thus we think the manufacturing of false documents by police officials offends our traditional notions of due process of law under both the federal and state constitutions.
> . . .
> We recognize that law enforcement officers must be allowed a degree of latitude in interrogating suspects, and we acknowledge the role of confessions in the administration of the criminal justice system. We must, however, decline to undermine the rapport the police have developed with the public by approving participation of law enforcement officers in practices which most citizens would consider highly inappropriate. We think that for us to sanction the manufacturing of false documents by the police would greatly lessen the respect the public has for the criminal justice system and for those sworn to uphold and enforce the law. In a word, in administration of the criminal law, we simply cannot allow the end of securing a confession to justify the means employed in this case.

*Id.* at 974-75.

[32] *See, e.g., Plaster v. City of Houston*, 721 S.W.2d 421, 422 (Tex. App.—Houston [1st Dist.] 1986, no writ) (discussing the planting of a "throw down gun" by Houston police officers at the scene of a fatal police shooting of a speeder); *City of Houston v. Dillon*, 596 S.W.2d 212, 214 (Tex. Civ. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.) (same); *City of Pasadena v. Barron*, 567 S.W.2d 73, 73-74 (Tex. Civ. App.—Houston [14th Dist.] 1978, writ ref'd n.r.e.).

[33] *See Alonzo v. State*, No. 05-05-01355-CR, 2007 WL 3173377 (Tex. App.—Dallas 2007, pet. ref'd) (not designated for publication).

[34] *De La Paz v. State*, 279 S.W.3d 336, 338 (Tex. Crim. App. 2009) (upholding police officer's conviction for tampering with evidence by filing a false offense report); *Wingo v. State*,

state. Neither police nor private individuals have a license to fabricate documents or other evidence and then use them to affect a criminal investigation or other official proceeding.[35] This is exactly the type of law violation that the Texas Legislature intended to prohibit when it enacted article 38.23–conduct by overzealous police officers who, despite their laudable motives, break the penal laws directly related to gathering and using evidence in their investigations. A police officer's violation of section 37.09 (or section 37.10) to obtain a confession or other evidence is at the core of conduct proscribed by the Texas exclusionary statute.

The State notes that the United States Supreme Court and this Court have long stated that the police may use "trickery and deception" during an interrogation;[36] thus, it argues,

_____

143 S.W.3d 178, 187 (Tex. App.—San Antonio 2004) (upholding police officer's conviction for tampering with a government record for filing a false incident report), aff'd, 189 S.W.3d 270 (Tex. Crim. App. 2006); *Magee v. State*, No. 01-02-00578-CR, 2003 WL 22862644 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (not designated for publication) (upholding conviction of deputy for filing a false police offense report).

[35] TEX. PENAL CODE § 37.09.

[36] *See Frazier v. Cupp,* 394 U.S. 731, 737-39 (1969) (refusing to find that a defendant who confesses, after being falsely told that his codefendant has turned State's evidence, does so involuntarily); *Oursbourn v. State*, 259 S.W.3d 159, 182 (Tex. Crim. App. 2008) ("it is well established that lying about the state of the evidence is not the sort of 'overreaching' that implicates the Due Process Clause, as long as the subterfuge used is not one likely to produce an untrue statement"); *Creager v. State*, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997); *Rodriquez v. State,* 934 S.W.2d 881, 890-91 (Tex. App.—Waco 1996, no pet.) ("The fact that the interrogating officers falsely stated to Rodriquez that the victim, on his deathbed, identified him as the assailant does not support a finding that the confession was involuntarily given. The voluntariness of a confession is not destroyed, and a confession induced by deception or trickery, is not inadmissible, unless the method used was calculated to produce an untruthful confession or was offensive to due process."); *Snow v. State,* 721 S.W.2d 943, 946 (Tex. App.—Houston [1st Dist.] 1986, no pet.) ("voluntariness is not destroyed, and a confession induced by deception or trickery is not inadmissible, unless the method used was calculated to produce an untruthful

fabricating evidence is just another form of trickery and deception.  It is not.  According to

Fred E. Inbau, the author of "the leading interrogation manual" for police officers,[37] verbal

trickery, deception and "outright lies concerning the existence of evidence" are acceptable

interrogation strategies, but not the use of "false, incriminating documents."[38]  Specifically,

---

confession or was offensive to due process."); *see generally,* C.T. Drechsler, *Annotation, Admissibility of Confession as Affected by Its Inducement through Artifice, Deception, Trickery, or Fraud,* 99 A.L.R.2d 772 (1965 & Supp.1993).  *But see* Richard A. Leo, Police Interrogation and American Justice 217 (2008) (discussing the sequential steps of how "persuaded false confessions" are obtained, the third step being that police "repeatedly confront the suspect with multiple forms of fabricated but allegedly irrefutable evidence of his guilt"; "the innocent suspect, who does not realize that the police are lying to him, cannot simply invent false evidence of his innocence to refute their assertions.  Instead, the suspect offers up the remaining basis for his belief in his innocence: that he has no memory of committing the crime.").

[37] *See* Welsh S. White, *What Is an Involuntary Confession Now?*, 50 RUTGERS L.REV. 2001, 2004 (1998) (describing "the Inbau Manual" as "the leading interrogation manual"); *Miranda v. Arizona*, 384 U.S. 436, 449 n. 9 (1966) (discussing an early edition of the Inbau Manual as having "rather extensive use among law enforcement agencies and among students of police science, with total sales and circulation of over 44,000.").

[38] FRED E. INBAU ET AL., CRIMINAL INTERROGATION AND CONFESSIONS 217 (4th ed. 2001).  The Inbau Manual advises,

> Before entering the interview room, the investigator should prepare and have on hand an evidence case folder, or a simulation of one. Then, at the outset of the interrogation, and also at appropriate times during the various steps that follow the initial confrontation, the investigator can make visual reference to the evidence folder. This is to lead the suspect to believe that the folder contains information and material of incriminating significance, even though, in fact, the file may contain nothing but blank sheets of paper. The mere sight of the file has a desirable effect on both guilty and innocent suspects because of the impression of preparedness on the part of the investigator.
> 
> In addition to an evidence file, depending on the nature of the case, the investigator may consider bringing into the interview room other visual props, such as video or audio tape, a fingerprint card, an evidence bag containing hair or other fibers, spent shell casings, vials of colored liquid, and others. No verbal reference needs to be made at all concerning these items of apparent physical evidence. The visual impact of seeing the implied evidence can have a desirable effect on a guilty suspect.

*Id.*

the Inbau Manual states,

> The investigator, however, should not prepare false incriminating documents that appear to have been generated through an official source (for example, a crime lab, the FBI). The reason for this is a concern that such falsified documents may find their way into the court system, *see State v. Cayward*, 552 So.2d 971 (Fla. Dist. Ct. App.1989).[39]

The problem is that such fabricated physical evidence–the type of evidence covered by section 37.09– has an enduring life of its own and could end up being mistaken for "the real McCoy":

> Unlike oral misrepresentations, manufactured documents have the potential of indefinite life and the facial appearance of authenticity. A report falsified for interrogation purposes might well be retained and filed in police paperwork. Such reports have the potential of finding their way into the courtroom.[40]

If police officers were free to manufacture physical evidence and fabricate documents to use in interrogating suspects, courts would no longer be able to routinely rely upon law enforcement or crime-lab reports as being accurate and reliable. The Texas Legislature, in

---

[39] *Id.* n.2.

[40] *State v. Cayward*, 552 So.2d 971, 974 (Fla. Dist. Ct. App. 1989). The Florida court went on to explain that

> false documents retained in police or state attorney's files might be disclosed to the media as a result of the public records law. A suspect's reputation could be unwittingly yet unfairly and permanently marred and his right to a fair trial jeopardized by the media's innocent reporting of falsified documents.
>
> We can also conceive of an unintended scenario where a manufactured document, initially designed only for use in interrogation, might be admitted as substantive evidence against a defendant. Although one hopes that such an error would be discovered in preparation for trial, the reality of our courts' heavy caseloads is that counsel and trial judges routinely accept as true documents which appear to be reliable reports from known government and private agencies.

*Id.* at 974-75.

enacting section 37.09 of the Penal Code, recognized that it is essential to our system of justice that citizens and members of the legal community can rely upon the integrity of government-generated documents and other evidence.

The State argues that "'sanctioned deception' is required in the course of a criminal investigation." As an example, it notes that "when an undercover officer buys an illegal narcotic in a controlled sale, the officer is not 'in possession' of the controlled substance as defined in the penal code."[41] Correct. That is statutorily "sanctioned deception." The Texas Legislature specifically exempted police officers who are acting in their official capacity from liability for the penal offense of possession of a controlled substance.[42] The Texas Legislature could, should it so decide, exempt police officers from liability for the offenses of tampering with evidence or fabricating government documents, but it has not yet done so. We are required to follow the law as it is currently written. Sometimes "it takes a thief to catch a thief," but the decision to exempt police officers from certain penal laws rests with the Legislature, not the courts.

The State also notes that some courts have held that the use of fabricated physical evidence or documents to induce a confession is merely one factor to consider under "the

---

[41] State's Brief at 7.

[42] TEX. HEALTH & SAFETY CODE § 481.062(a)(4) ("The following persons are not required to register and may possess a controlled substance under this chapter: an officer or employee of this state, another state, a political subdivision of this state or another state, or the United States who is lawfully engaged in the enforcement of a law relating to a controlled substance or drug or to a customs law and authorized to possess the controlled substance in the discharge of the person's official duties[.]").

totality of circumstances" in deciding whether a defendant's confession is voluntary under the Due Process Clause of the United States Constitution.[43]  If appellant had presented us with a federal constitutional question concerning the voluntariness of his confession, that might well be our approach. But a claim concerning the "voluntariness" of a confession under the due process clause of the federal constitution is an entirely different claim, assessed under legally distinct standards, from one concerning the violation of a state statute relating to the acquisition of evidence.[44]  By enacting article 38.23, which bars the use of evidence obtained in violation of Texas penal statutes related to the acquisition of evidence, the Texas Legislature pre-empted this issue as a matter of state law, regardless of the constitutional voluntariness of appellant's confession.  Thus, we must conclude that a violation of section 37.09, a state law directly related to the acquisition and use of evidence in criminal investigations and proceedings, bars the admission of other evidence obtained through that

---

[43] *See, e.g., Lincoln v. State*, 882 A.2d 944, 958-59 (Md. Ct. Spec. App. 2005) (stating that the officer's use of "fake" writings on the back of photographs during an interrogation was part of the "totality of circumstances" to be considered in deciding whether the defendant's confession was constitutionally voluntary); *State v. Von Dohlen,* 471 S.E.2d 689, 694-95 (S.C. 1996) (although court agreed that police interrogation tactics were "reprehensible," creation of fake composite sketch and false statements that spent casings officers showed to defendant were recovered at the crime scene did not automatically render defendant's confession constitutionally involuntary); *Sheriff, Washoe County v. Bessey*, 914 P.2d 618, 621-22 (Nev. 1996) (defendant's confession was constitutionally voluntary "under the totality of the circumstances" despite use of a false crime lab report).

[44] *See, e.g., Resendez v. State*, No. PD-0917-08, ___ S.W.3d __, __, 2009 WL 3365656, at *4-5  (Tex. Crim. App. Oct. 21, 2009) (defendant failed to preserve for review statutory grounds for exclusion of his confession when he relied solely on federal constitutional arguments); *Buchanan v. State*, 207 S.W.3d 772, 776 (Tex. Crim. App. 2006) (defendant failed to preserve for review statutory grounds for exclusion of evidence obtained from warrantless arrest when he relied solely on federal constitutional arguments).

violation, even when the defendant's confession is "voluntary" under federal constitutional standards.

*2.      Det. Roberts violated section 37.09 of the Texas Penal Code.*

A person violates section 37.09 if he:

(1) knowing that an investigation is pending or in progress;

(2) makes, presents, or uses a document with knowledge of its falsity; and

(3) acts with the intent to affect the course or outcome of the investigation.[45]

Det. Roberts forthrightly admitted that, during his investigation of the murder of Amos Gutierrez, he created a false fingerprint report by altering a real governmental report which he intended for appellant to think was a genuine report. He did this because he hoped that appellant would rely on that altered report and make an incriminating statement. Det. Roberts's ploy was successful, and the use of the false fingerprint report did affect Det. Robert's investigation by causing appellant to confess to murder.[46] This conduct violates

---

[45] TEX. PENAL CODE § 37.09(a)(2).

[46] After a series of lead-up questions, defense counsel asked Det. Roberts the following:

Q:     And so the mystery about this document is that what you did is you fabricated a government document, which you just said that you did, or you made it up with you knowing that it was false with your hopes that [appellant] would rely on it as to be a genuine government document and that turns out to be Defendant's Exhibit Number 1 [the fingerprint report], is that correct?

A:     Yes, sir.

. . .

Q:     So you fabricated this document to get a confession from the guy, didn't you?

A:     In the hopes that he would either give information and either incriminate himself or ---

section 37.09.[47]

The State argues that, "[s]ince detectives are allowed to deceive suspects during interrogations, Detective Roberts was reasonable in believing his act in presenting the 'dummy' lab report to Wilson was lawful. Because this belief was reasonable, the exclusionary rule is not applicable."[48] First, Det. Roberts never said that he thought his conduct was lawful or that he believed that it was lawful to use a fabricated fingerprint report as a part of his investigation. He never said that he thought that what he was doing was reasonable. He did say, when asked if his conduct violated section 37.10 (tampering with governmental record), "I think that's stretching it," but he never explained why he thought that his conduct might

---

[47] The State argues that Det. Roberts did not violate section 37.09 because "[t]here was no intent on the part of the detective to create a lab report for purposes of submitting such report as evidence in an attempt to convince a judge or jury that the appellant's fingerprints were recovered at the scene. The document was not intended to be taken by any government agency as authentic, nor was it filed with a court as an authentic lab report." State's Brief at 6. Suffice it to say, that section 37.09 does not require that the person intend to deceive a government agency. The actor need only intend "to affect the course or outcome of the investigation[.]" TEX. PENAL CODE § 37.09(a)(2).

 The State also argues that section 37.09(b) provides a defense to prosecution which states, "This section shall not apply if the record, document, or thing concealed is privileged or is the work product of the parties to the investigation or official proceeding." According to the State, the false fingerprint report was Det. Roberts's "work product" because he created the document "as an interrogation technique, not to submit to the court as an authentic lab report for purposes of having the report admitted as evidence." This report is not privileged "work product." The "work product" of an attorney or party to litigation is material that is created for the sole use of the attorney or party in anticipation of litigation and is not to be shared with anyone else, especially the opposing party. *See* TEX. R. CIV. P. 192.5 (defining work product and its protection from discovery); *see generally National Tank Co. v. Brotherton*, 851 S.W.2d 193 (Tex. 1993). Here, Det. Roberts created his report precisely to give it to appellant–an outsider–to affect the course of his investigation.

[48] State's Brief at 10.

not be a violation of that penal provision. More importantly, a "good faith," or "pure motive" violation of Texas penal laws concerning the acquisition of evidence does not render article 38.23 inapplicable to the evidence obtained as a result of that violation. Det. Roberts's subjective belief that his conduct was lawful or reasonable would not render the Texas exclusionary statute inapplicable to his violation of section 37.09.

In sum, we agree with the court of appeals that the officer violated section 37.09 of the Texas Penal Code and that appellant's confession was inadmissible under article 38.23.[49] We therefore affirm the judgment of the court of appeals.

Delivered: March 3, 2010

Publish

---

[49] The State does not argue, in this Court, that appellant failed to show a causal connection between the violation of law and the making of the confession or that any taint was attenuated.