**AFFIRM; and Opinion Filed February 27, 2014.**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-12-01406-CR**

**JULIA BREAD CORNELIUS, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 401st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 401-82257-2011**

## MEMORANDUM OPINION

Before Justices Francis, Lang-Miers, and Lewis
Opinion by Justice Lang-Miers

Julia Bread Cornelius pleaded not guilty to driving while intoxicated with a child under the age of fifteen as a passenger in the vehicle. A jury convicted and sentenced her to two years in state jail and a $1,000 fine. At the jury's recommendation, the trial court suspended the imposition of the jail sentence and placed appellant on community supervision for three years. In one issue on appeal, appellant argues that the trial court erred by denying her motion to suppress. We issue this memorandum opinion because the issue is settled. TEX. R. APP. P. 47.4. We affirm the trial court's judgment.

### Background

Plano police officer Christopher Matthews was driving southbound on US-75 at the posted speed limit of 60 miles per hour in a vehicle clearly marked as a Plano police vehicle. He saw an Isuzu SUV driven by appellant in his rear view mirror enter the highway and accelerate

across all lanes at what he considered "a high rate of speed." Appellant "nearly struck [him] from behind" and "veered around [him] just prior to striking" his vehicle. The officer characterized appellant's driving as "inattentive, reckless." He said she made an unsafe lane change because she "could possibly cause harm to another," or "could create an accident or . . . cause others to react to [her] lane change." As the vehicle came around him, he saw "the nose of the vehicle suddenly [dive] towards the ground, indicating that the driver of that vehicle had suddenly applied the brakes." He said "rapid deceleration" is an indicator of an impaired or intoxicated driver based on his experience and training.

The officer followed appellant and turned on the camera in his patrol car. He noticed the vehicle drifting within its lane, and each time the vehicle changed lanes, "it would stay close to the far right side of the lane, kind of hovering right at the lane marker, lane dividers." He testified that in his experience and training, individuals who are intoxicated will find a point in the road to focus on to help them maintain the lane they are in. He testified that in his experience and training, rapid acceleration and drifting are also driving behaviors consistent with impaired or intoxicated drivers. After following appellant for about a minute, the officer activated his overhead lights. Appellant signaled three times before pulling over and coming to a stop.

After this testimony defense counsel asked to take the witness on "voir dire" outside the presence of the jury for purposes of his motion to suppress. During the hearing on appellant's motion, the officer testified that he stopped appellant because he "observed her entering the highway at a high rate of speed. She nearly struck the rear of my vehicle. As she passed me, slammed on her brakes – . . . And then observed her vehicle drifting as she continued driving south." He said "[s]he was moving all the way across from the area of the entrance ramp, all the way over."

Defense counsel compared this testimony with the officer's police report and prior testimony at the administrative license revocation hearing. The officer agreed that he did not state in his police report or at the ALR hearing that appellant entered the highway at a high rate of speed. However, the police report stated that appellant "appeared to be traveling at a high rate of speed." Defense counsel also pointed out that the officer used different words in his police report and at the ALR hearing to describe appellant's "rapid deceleration" that he testified about during the trial. For example, in the police report, he said appellant's "vehicle nose dove towards the ground as it swerved past my vehicle." And at the ALR hearing the officer said the driver "braked suddenly, swerved around me and continued past my patrol vehicle." The officer said this was three different ways of saying the same thing.

Defense counsel questioned the officer about his conclusion that appellant was "following too closely." The officer testified, "Well, at the distance she was at when she was approaching me before she swerved around me, had I had to brake suddenly or take any other action, she would not have been able to avoid striking my vehicle." He agreed he did not have to take evasive action as the result of appellant's driving.

The State introduced the video from the officer's car camera. The officer can be heard asking appellant why she almost hit him, and appellant's car can be seen drifting within the lane and staying close to the right lane marker, as the officer testified.

At the conclusion of the hearing, defense counsel argued that the officer did not have reasonable suspicion to conduct the traffic stop. He argued that the officer had given "three different versions of what happened as far as the braking—slam on brakes, nose went down, braked suddenly." He said "[y]ou're allowed to slow down. You're allowed to accelerate within a lane as long as you do it safely. And this officer didn't have to take any evasive action whatsoever. . . . In prior testimony, he said she was following too close. That's it. He didn't say

–3–

anything about drifting. He didn't say anything about weaving." Appellant also argued that it was "a late night" and "[t]he officer saw a person come on the road and probably slow down in front of the police officer. He then began following her and he didn't see anything to justify the stop . . . [t]here's nothing on the videotape to justify the stop." The trial court denied the motion to suppress.

When the trial continued, the officer testified that he walked to appellant's car, contacted appellant, and saw a child sitting in a car seat in the back seat. He noticed appellant had bloodshot eyes and a moderate odor of an alcoholic beverage on her breath. He told appellant that he stopped her "because she nearly took off [his] rear bumper." Appellant said she was texting as she entered the highway. The officer administered several field sobriety tests and arrested appellant for suspicion of driving while intoxicated based on her performance on the tests and her answers to his questions. Appellant refused to submit to a preliminary breath test, so the officer took appellant to Medical Center of Plano for a mandatory blood draw. The specimen contained 0.21 grams of alcohol per 100 milliliters of blood. The jury found appellant guilty.

**Standard of Review**

We apply a bifurcated standard of review when reviewing a trial court's ruling on a motion to suppress. *Wilson v. State*, 311 S.W.3d 452, 457–58 (Tex. Crim. App. 2010). In our review, we examine the evidence in the light most favorable to the trial court's ruling. *Id*. at 458. We give "almost total deference to a trial court's determination of historical facts" that are supported by the record, "especially when the trial court's fact findings are based on an evaluation of credibility and demeanor." *Alford v. State*, 400 S.W.3d 924, 929 n.3 (Tex. Crim. App. 2013). We review the trial court's legal ruling de novo. *State v. Kelly*, 204 S.W.3d 808, 819 (Tex. Crim. App. 2006). In ruling on a motion to suppress, the trial court is the sole trier of

–4–

fact and may believe or disbelieve all or any part of a witness's testimony. *Wilson*, 311 S.W.3d at 458. We will uphold the ruling if it is correct on any theory of law applicable to the case. *Kelly*, 204 S.W.3d at 819 n.21.

## Applicable Law

An officer may conduct a lawful temporary detention if he has reasonable suspicion to believe an individual is violating the law. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). "Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity." *Id.* The test is an objective standard; the police officer's subjective intent is not considered. *Id.* In other words, we do not consider the officer's actual stated reason for stopping the driver but, instead, determine whether the totality of the circumstances would lead a police officer to reasonably believe that "crime is afoot." *See Fernandez v. State*, 306 S.W.3d 354, 357 (Tex. App.—Fort Worth 2010, no pet.) (quoting *State v. Patterson*, 291 S.W.3d 121, 123 (Tex. App.—Amarillo 2009, no pet.)).

## Discussion

In her sole issue on appeal appellant argues that the primary reason the officer gave for the stop was that appellant was "following too closely." She argues that "[a]t no point did Appellant commit the offense of following too closely." The State argues that the trial court had several bases on which it could have concluded the officer had reasonable suspicion to stop appellant. We agree with the State.

The transportation code requires the operator of a vehicle, when following another vehicle, to "maintain an assured clear distance between the two vehicles so that, considering the speed of the vehicles, traffic, and the conditions of the highway, the operator can safely stop

–5–

without colliding with the preceding vehicle or veering into another vehicle, object, or person on or near the roadway." TEX. TRANSP. CODE ANN. § 545.062 (West 2011). The officer testified that as appellant crossed the lanes behind him, she nearly struck his vehicle, had to swerve to miss his vehicle, and if he had to brake suddenly, she would not have been able to avoid hitting his vehicle. *See Castro v. State*, 227 S.W.3d 737, 741–43 (Tex. Crim. App. 2007) (explaining difference between a conclusory statement that driver was following too close and specific, articulable facts to support opinion). Additionally, the trial court could have denied the motion to suppress because the officer had reasonable suspicion that appellant was speeding. "A speed in excess of the limits . . . is prima facie evidence that the speed is not reasonable and prudent and that the speed is unlawful." *Id*. § 545.352(a) (West Supp. 2013). The officer testified that appellant was driving at a high rate of speed, passed him while he was driving the posted speed limit of 60 mph, and applied her brakes suddenly when she came alongside the officer's car. These are specific, articulable facts supporting the officer's opinion that appellant was speeding. *See Icke v. State*, 36 S.W.3d 913, 916 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd).

We conclude that the evidence supports the trial court's implied findings that the officer had reasonable suspicion to stop appellant for violating the law. As a result, the trial court did not abuse its discretion by denying appellant's motion to suppress. We resolve appellant's sole issue against her.

### Conclusion

We affirm the trial court's judgment.

/Elizabeth Lang-Miers/
_____
ELIZABETH LANG-MIERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

121406F.U05

–6–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JULIA BREAD CORNELIUS, Appellant

No. 05-12-01406-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 401st Judicial District Court, Collin County, Texas
Trial Court Cause No. 401-82257-2011.
Opinion delivered by Justice Lang-Miers, Justices Francis and Lewis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 27th day of February, 2014.

/Elizabeth Lang-Miers/

ELIZABETH LANG-MIERS
JUSTICE