**Opinion issued April 16, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-01072-CR

———————————

## LAWAN PALUMBO, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the County Criminal Court at Law No. 5**
**Harris County, Texas**
**Trial Court Case No. 1868453**

---

## MEMORANDUM OPINION

A jury convicted appellant, Lawan Palumbo, of the misdemeanor offense of prostitution. *See* TEX. PENAL CODE ANN. § 43.02(a) (West Supp. 2014). The trial court then assessed punishment, as agreed to by the parties, at 180 days' confinement in the county jail and a $2,000 fine, but suspended imposition of the

confinement and placed Palumbo on community supervision for one year. In four issues on appeal, appellant contends: (1) trial counsel rendered ineffective assistance by failing to object to, or otherwise attack, the admission of unlawfully obtained evidence; (2) the trial court committed fundamental error by admitting the unlawfully obtained evidence; (3) the trial court erred by failing to *sua sponte* issue a jury charge pursuant to article 38.23 of the Texas Code of Criminal Procedure regarding the unlawfully obtained evidence; and (4) the trial court erred by failing to *sua sponte* appoint an interpreter for Palumbo's benefit. We affirm.

### Background

On December 17, 2012, officers from the vice division of the Houston Police Department conducted an undercover investigation at the Pink Spa, to determine whether prostitution was occurring at the business. As part of the investigation, Officer Bobby Smith entered the Pink Spa posing as a customer. Upon entering the business, Smith paid a $60 door fee and was escorted to a room. Palumbo then entered the room, wearing lingerie. After Palumbo provided Smith with a short massage, she inquired what else Smith would like. Smith, using street language, asked how much it would cost to have sexual intercourse with Palumbo. After some negotiation, Smith offered Palumbo $140 in exchange for Palumbo engaging in sexual intercourse and oral sex with him. Smith testified that Palumbo agreed to his proposition and that they agreed to exchange $140 for the provision

2

of sexual intercourse and oral sex.  After the agreement was made, Smith identified himself as a police officer and arrested Palumbo.

The State charged Palumbo by information with committing the offense of prostitution.  Palumbo pleaded not guilty to the charge.

At trial, the State introduced, among other evidence, Smith's testimony and an audio recording Smith made during his undercover investigation.

Palumbo, who has lived in Houston since 1990, also testified at trial.  Near the conclusion of her testimony on direct examination, the trial court called the attorneys to the bench, where the following exchange occurred:

> The Court: I'm a little uncomfortable as to her fluency in English.  Are you convinced that she's fluent in English?
> [Defense counsel]: It's a tough call.  I was going to get an interpreter, but I think she knew enough to –
> The Court: Did you discuss it with her?
> [Defense counsel]: Yes.
> The Court: And was it her decision to go forward without an interpreter?
> [Defense counsel]: No.
> The Court: Did she ask for an interpreter?
> [Defense counsel]: I mentioned it to her.
> The Court: And what did she say?  That she was comfortable going forward without one. [sic]
> [Defense counsel]: I asked her if she understood what we were talking about and she said yes.
> The Court: Okay.  Did you ever ask her whether she wanted to have an interpreter or not?
> [Defense counsel]: Maybe early on in the case, like, at our settings.
> The Court: Okay.  And she said?
> [Defense counsel]: No.

3

The Court: Okay. Have you been comfortable that she understood what you told her prior to trial?

[Defense counsel]: yes.

The Court: And during this trial, has she appeared to understand?

[Defense counsel]: Yes.

The Court: What is her native language?

[Defense counsel]: Thai.

The trial court then excused the jury from the courtroom and held a hearing to determine whether an interpreter was necessary for Palumbo's benefit:

The Court: . . . I'm concerned that you might not understand everything that's happening. How do you feel about it? Do you feel like you understand what everyone is asking you and saying?

[Palumbo]: You know, be honest with you, sometimes I understand, but sometimes the truth is the truth, you know. But I try to answer the truth, that's all I did.

The Court: That's not my question, though. I just want to know whether you need an interpreter. Do you need someone to speak Thai with you?

[Palumbo]: Yes. First, I ask him because sometimes, you know, like, the word fall, sometimes I don't understand.

The Court: Okay. And you said early on – or before you asked him that. How about for trial, though, are you okay testifying without an interpreter to speak Thai with you?

[Palumbo]: Yes.

The Court: You're okay? You feel like you understand well enough?

[Palumbo]: Yes.

. . .

[Palumbo]: But may I ask you for the translator for a little bit, that's okay? Like, with some questions I don't understand, like, I might ask my brother or something.

The Court: No. No. But we can do one of two things. We can stop the trial right now and come back tomorrow with an interpreter, if we can find one by then. Or you can, if you don't understand a particular phrase, you can ask either lawyer to say it a different way to see if you understand the other way.

4

[Palumbo]: Okay.

The Court: It's up to you.

[Palumbo]: So, I can ask them, like, what this mean, right?

The Court: Yes.

[Palumbo]: Okay.

The Court: Like, if they said a phrase and you didn't understand those words, you can ask: What does that mean?

[Palumbo]: Okay.

The Court: And they can try to explain it to you.

[Palumbo]: Okay.

The Court: I don't mind either way. I did not anticipate your testifying. I don't think your lawyer knew that you were going to testify either. You understand what all the other witnesses said, right?

[Palumbo]: Yes.

The Court: So, there's no problem with that?

[Palumbo]: No.

The Court: Okay. And so it's just a matter of whether you understand what you're being asked. If you get to a point where you don't think you can do this without an interpreter let me know.

[Palumbo]: Okay.

The Court: All right. So, what do you want to do: Do you want to try just asking them what they mean, or do you want to wait for an interpreter?

[Palumbo]: Maybe I try for what they ask, the question.

The Court: Okay.

. . .

The Court: . . . So, we all agree, that the minute you tell me you don't understand – and they can't explain it to you – we'll just recess and get an interpreter.

[Palumbo]: Okay.

Palumbo continued to testify after this exchange, and she only requested clarification of one question posed to her, which she understood upon clarification. Further, she testified that she has owned more than one business and that she has worked with approximately 30 English-speaking employees on a daily basis.

At the conclusion of the trial, the jury found Palumbo guilty of prostitution.

5

## Admissibility of Evidence of Undercover Investigations

In her first three issues on appeal, Palumbo argues that, because intent is not an element of the offense of prostitution and because the prostitution statute does not contain a provision authorizing law enforcement officials to violate the statute in order to conduct investigations, Smith committed the offense of prostitution when he agreed to pay Palumbo money in exchange for sexual conduct. Palumbo therefore argues that the evidence obtained as a result of Smith's investigation, including his testimony and the recording of his investigation, was obtained in violation of the law and was inadmissible pursuant to article 38.23 of the Texas Code of Criminal Procedure. Based on this argument, Palumbo contends, in her first issue on appeal, that she was denied effective assistance of counsel because her trial counsel failed to seek suppression, or object to the admission, of Smith's testimony and the recording, and there is no cognizable strategic reason that counsel could have for failing to object to the admission of the only evidence proffered by the State showing that Palumbo committed the offense of prostitution. In her second issue, Palumbo contends that because Smith's testimony and the recording were obtained in violation of the law, article 38.23(a) barred the admission of said evidence at her trial and the trial court committed fundamental error by admitting the evidence. And in her third issue, Palumbo contends that the trial court erred by failing to *sua sponte* include a jury charge containing an

instruction pursuant to article 38.23 regarding Smith's testimony and the recording. Because each of these issues hinges on Palumbo's ability to invoke article 38.23, we first consider whether Palumbo may invoke article 38.23 for an alleged violation of the prostitution statute, section 43.02 of the Texas Penal Code.

Article 38.23 prohibits any evidence obtained in violation of law from being admitted against an accused in the trial of a criminal case. TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2005). Nevertheless, article 38.23(a) does not "confer automatic third party standing upon all persons accused of crimes, such that they may complain about the receipt of evidence which was obtained by violation of the rights of others, no matter how remote in interest from themselves." *Fuller v. State*, 829 S.W.2d 191, 202 (Tex. Crim. App. 1992); *see Chavez v. State*, 9 S.W.3d 817, 819 (Tex. Crim. App. 2000). The purposes underlying article 38.23(a) are the same as the purposes underlying the federal exclusionary rule: "to protect a suspect's privacy, property, and liberty rights against overzealous law enforcement," and the primary purpose "is to deter unlawful actions which violate the rights of criminal suspects in the acquisition of evidence for prosecution." *Wilson v. State*, 311 S.W.3d 452, 458–59 (Tex. Crim. App. 2010). "As such, both exclusionary rules are substantive in nature, as they provide a remedy of the violations of those rights." *Id.* at 459. Thus, although the plain language of the statute suggests "that evidence obtained in violation of *any* law must be

7

suppressed, . . . [a]rticle 38.23(a) may not be invoked for statutory violations unrelated to the purpose of the exclusionary rule or to the prevention of the illegal procurement of evidence of crime." *Id.*; *see also Watson v. State*, 10 S.W.3d 782, 784 (Tex. App.—Austin 2000, no pet.) (collecting cases wherein article 38.23(a)'s exclusionary rule was not applied to statutory violations and refusing to apply exclusionary rule to violation of prostitution statute).

Here, Palumbo's argument fails to take into account the purposes of article 38.23(a). Regardless of whether Officer Smith violated the law while conducting this undercover investigation,[1] he did not violate any constitutional or statutory right of Palumbo. *See Watson*, 10 S.W.3d at 784. Therefore, Palumbo lacks standing to assert a violation of article 38.23(a), and she could not have invoked article 38.23(a) in the trial court in an attempt to suppress Smith's testimony or the audio recording. *See Wilson*, 311 S.W.3d at 459; *Chavez*, 9 S.W.3d at 819; *Fuller*, 829 S.W.2d at 202; *Watson*, 10 S.W.3d at 784.

Because Palumbo could not invoke article 38.23(a) in this case, Palumbo's trial counsel did not render ineffective assistance by failing to attack the admissibility of Smith's testimony and the audio recording under article 38.23(a), the trial court did not commit fundamental error by admitting the evidence, and the

---

[1] We express no opinion regarding whether Officer Smith committed the offense of prostitution or whether a law enforcement officer commits such an offense if acting solely in the course of his or her official duties.

trial court did not err by omitting an article 38.23(a) instruction from the jury charge.

Accordingly, we overrule Palumbo's first three issues.

## Right to an Interpreter

In her fourth issue on appeal, Palumbo contends that the trial court erred by failing to *sua sponte* appoint an interpreter for her because the trial court was aware of her inability to understand English.

Under the Sixth Amendment to the United States Constitution, an interpreter must be provided to an accused who does not understand the English language. *See Garcia v. State*, 149 S.W.3d 135, 140–41 (Tex. Crim. App. 2004); *Miller v. State*, 177 S.W.3d 1, 5 (Tex. App.—Houston [1st Dist.] 2004, no pet.). An accused may, however, waive the right to an interpreter, so long as the waiver is knowing, intelligent, and voluntary. *See Garcia v. State*, 429 S.W.3d 604, 607–09 (Tex. Crim. App. 2014); *Garcia*, 149 S.W.3d at 144.

We review a trial court's decision regarding whether to appoint an interpreter for an abuse of discretion. *See Perez v. State*, No. 13-11-00366-CR, 2012 WL 1481535, at *2 (Tex. App.—Corpus Christi April 26, 2012, no pet.) (mem. op.); *Abdygapparova v. State*, 243 S.W.3d 191, 201 (Tex. App.—San Antonio 2007, pet. ref'd). And a "reviewing court will not conclude that a trial court abused its discretion by not appointing an interpreter when the record shows

the accused adequately understood English." *Perez*, 2012 WL 1481535, at *2; *see Abdygapparova*, 243 S.W.3d at 201–03.

Here, the record shows that the trial court was concerned about Palumbo's ability to understand English. But the trial court addressed this concern with Palumbo at trial, and the record contains evidence that Palumbo was capable of communicating in English. Palumbo's trial counsel informed the trial court that he asked Palumbo if she wanted an interpreter and she stated that she did not. Counsel further stated that Palumbo told him she understood what they had discussed, that he was comfortable that Palumbo understood everything he told her prior to trial, and that she appeared to understand everything that had happened at the trial. Palumbo was able to answer each of the questions posed to her, and, although she was informed that she could request clarification of any question she did not understand, she only requested clarification of one question posed to her, which she understood after the question was re-phrased. She testified that she has operated several businesses that employed numerous English-speaking employees. And, most importantly, she informed the trial court, when asked, that she was okay without an interpreter and that she had understood the other witnesses' testimony. Under these circumstances, we cannot conclude that the trial court acted arbitrarily or capriciously when it decided, after speaking with Palumbo on the record and

10

observing Palumbo during the trial, not to appoint an interpreter in this case. *See Abdygapparova*, 243 S.W.3d at 203.

Further, the record shows that Palumbo freely and knowingly waived her right to an interpreter. Palumbo's trial counsel discussed the possibility of getting an interpreter with her, but she told him she did not want an interpreter. Moreover, Palumbo informed the trial court that she could testify without an interpreter, that she understood English well enough to testify, and, when asked if she would prefer to wait for an interpreter or attempt to answer the questions posed to her without an interpreter, that she would try to answer the questions. Under these facts, the record reflects that Palumbo validly waived the right to an interpreter. *See Garcia*, 429 S.W.3d at 609.

Accordingly, we overrule Palumbo's fourth issue.

## Conclusion

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Brown and Lloyd.

Do not publish. TEX. R. APP. P. 47.2(b).

11