

NUMBER 13-13-00470-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **MICHAEL GENE ELLIOTT,** | **Appellant,** |
| **v.** | |
| **THE STATE OF TEXAS,** | **Appellee.** |

### On appeal from the 105th District Court
### of Kleberg County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Benavides
### Memorandum Opinion by Justice Benavides

Appellant Michael Gene Elliott appeals his conviction for two counts of sexual assault, both second-degree felonies. *See* TEX. PENAL CODE ANN. § 22.011 (West, Westlaw through 2013 3d C.S.). By two issues, Elliott contends that (1) the evidence is insufficient to support his convictions; and (2) the trial court's punishment was

disproportionate and in violation of his federal constitutional rights.   We affirm.

## I.   BACKGROUND

A Kleberg County grand jury indicted Elliott for three counts of sexual assault.[1] *See id.*   Elliott pleaded not guilty to each count and was tried before a jury.   The record reveals the following:

On June 9, 2012, Kingsville police officers were called to the Casa de Paz apartment complex in reference to an alleged sexual assault.   Testimony revealed that Casa de Paz is a complex in Kingsville whose residents suffer from mental illnesses such as bipolar disorder, schizophrenia, and depression.   Police met with one of Casa de Paz's residents, Dale Houseburg, who reported the crime.

Houseburg testified that he was sexually assaulted by Elliott inside of Houseburg's apartment and again later at Elliott's home in the presence of a third individual, Mary Helme.   Houseburg stated that Elliott was an acquaintance and that he did not consider Elliott a close friend.   Houseburg also knew Helme, who was a fellow resident of Casa de Paz, and considered her a "friend."   According to Houseburg, on June 8, 2012, he took out the trash from his apartment, when he encountered Elliott and Helme near the complex's dumpster.   Houseburg stated that Elliott told him that he "wanted to talk to [him] in [his] apartment."   Houseburg agreed and allowed Elliott into his apartment, while Helme stayed outside.

---

[1] Specifically, the State alleged: in count one that Elliott "intentionally or knowingly cause[d] the penetration of the anus of [Houseburg], by Elliott's sexual organ, without the consent of [Houseburg]"; in count two that Elliott "intentionally or knowingly cause[d] the penetration of the anus of [Houseburg] by a rubber penis"; and in count three, that Elliott "intentionally or knowingly cause[d] the penetration of the mouth of [Houseburg] by Elliott's sexual organ, without the consent of [Houseburg]."

2

Once inside Houseburg's apartment, Elliott told Houseburg to take off his clothes and said that he was "going to punish" Houseburg. According to Houseburg, Elliott removed his pants and underwear and instructed Houseburg to "go down on his penis." Houseburg testified that he did not want to perform the sexual act, but felt as if he had no other alternative, so he complied with Houseburg's instruction. Houseburg testified that he was "worried about [Elliott] . . . . [b]ecause [he] didn't know if [Elliott] had a weapon on him or not." After Houseburg performed oral sex on Elliott, Elliott then inserted his penis inside of Houseburg's anus. Houseburg testified that the action "hurt," and that he "didn't like it." After Elliott finished, he instructed Houseburg to put his clothes back on and accompany Elliott to his house, which was off the premises of Casa de Paz. Houseburg complied and rode in Elliott's truck to Elliott's home with Elliott and Helme, who had rejoined them.

Houseburg testified that he left with Elliott "because he asked me to." Houseburg added that he thought he could not refuse because he thought Elliott "would be mad." More specifically, Houseburg testified that he thought by refusing, Elliott would have caused him "bodily harm" through "physical violence." After entering Elliott's home, Houseburg took a shower "because [he] was dirty" and because Elliott told him to take one. After the shower, Elliott instructed "everybody [to] get in the bed," including Helme. Houseburg again testified that he did not want to follow Elliott's instructions, but Elliott had a knife, and Houseburg was worried that Elliott would hurt him, after Elliott told him that "he could have [taken] [Houseburg] out on the back road," if he did not follow Elliott's instructions. According to Houseburg, once in the bed, Elliott stuck his penis inside of Houseburg's mouth and then, again, inside of his anus. Later,

3

Elliott hit Houseburg with a belt. Houseburg admitted that he did not tell Elliott to stop because he was "too scared." Houseburg also stated that at some point in the evening, Elliott stuck a rubber penis inside of Houseburg's anus, without his permission. During cross-examination, Houseburg admitted to having sex with Helme. After the sexual encounter, Houseburg spent the night at Elliott's home with Elliott and Helme. The next morning, Elliott drove Houseburg and Helme back to the Casa de Paz. At the Casa de Paz, Houseburg approached Mireya Cantu, the complex's manager. Cantu testified that Houseburg appeared "scared" and appeared to be crying on June 9, 2012. After Houseburg relayed to Cantu what had happened, Cantu called the police. Cantu compared Houseburg's personality to that of a child and testified that he normally stayed in his apartment "drinking coffee and smoking."

Helme testified that she has known Houseburg for eight years and considered him a friend. Helme also testified that Elliott was her boyfriend and that the two had a sexual relationship. When asked about her understanding of why she was called to testify, Helme stated, "Dale Houseburg was abused by [Elliott] sexually." Helme acknowledged that she, Elliott, and Houseburg engaged in group sex on June 8, 2012, but also stated that Houseburg was "very shook up" the next day. According to Helme, Houseburg insulted her prior to June 8, 2012 by calling her "ugly" and "fat" in front of the other neighbors at Casa de Paz. Helme testified that when Elliott learned about Houseburg insulting Helme, Elliott confronted Houseburg, told him to "get in the blanking truck"[2] and asked Helme to join them. According to Helme, once at the apartment, Elliott had sex with Houseburg and then tried to force Helme and Houseburg to have sex,

---

[2] Helme testified that Elliott did not actually use the word "blanking," but instead, used the "F word."

4

but they both declined.   Helme testified that Elliott later "swatted" Houseburg with a belt.
Helme stated that she and Elliott would "play" with the belt in the past, but that he never
hurt her.   Elliott did not testify.

At the close of the State's case-in-chief, Elliott's counsel filed a motion for
acquittal with regard to count two for failure to state an essential element of the
crime—that is, count two did not allege that the act was done without Houseburg's
consent—and a motion for directed verdict as to the remaining counts.   The trial court
granted Elliott's motion for acquittal as to count two, but denied the motion for directed
verdict on counts one and three.   The jury found Elliott guilty of counts one and three.
After the punishment phase of trial, the trial court sentenced Elliott to two terms of eight
years' imprisonment with the Texas Department of Criminal Justice—Institutional
Division, with both terms to run concurrent.   This appeal followed.

## II.   SUFFICIENCY CHALLENGE

By his first issue, Elliott challenges the sufficiency of evidence to support his
convictions.[3]

## A.   Standard of Review and Applicable Law

In reviewing the sufficiency of the evidence to support a conviction, we consider
all of the evidence in the light most favorable to the verdict and determine whether,
based on that evidence and reasonable inferences therefrom, a rational fact finder could

---

[3] We note that Elliott challenges the factual and legal sufficiency of the evidence supporting his
conviction.   The Texas Court of Criminal Appeals has held that there is "no meaningful distinction between
the *Jackson v. Virginia* legal sufficiency standard and the *Clewis* factual-sufficiency standard" and that the
*Jackson* standard "is the only standard that a reviewing court should apply in determining whether the
evidence is sufficient to support each element of a criminal offense that the State is required to prove
beyond a reasonable doubt."   *Brooks v. State*, 323 S.W.3d 893, 902–03, 912 (Tex. Crim. App. 2010)
(plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).   Accordingly, we will review Elliott's
claims of evidentiary sufficiency under a "rigorous and proper application" of the *Jackson* standard of
review.   *See id.* at 906–07, 912.

have found the essential elements of the crime beyond a reasonable doubt. *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013); *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.). In viewing the evidence in the light most favorable to the verdict, we defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *Brooks*, 323 S.W.3d at 899. It is unnecessary for every fact to point directly and independently to the guilt of the accused; it is enough if the finding of guilty is warranted by the cumulative force of all incriminating evidence. *Winfrey*, 393 S.W.3d at 768 (citations omitted).

The elements of the offense are measured as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* Under a hypothetically correct jury charge, as authorized by the indictment in this case, Elliott is guilty of sexual assault under count one if he: intentionally or knowingly caused the penetration of Houseburg's anus or sexual organ with Elliott's sexual organ without Houseburg's consent, *see* TEX. PENAL CODE ANN. § 22.011(a)(1)(A); and Elliott is guilty of sexual assault under count three if he: caused the penetration of Houseburg's mouth by Elliott's sexual organ without Houseburg's consent. *See id.* § 22.011(a)(1)(C).

6

**B.    Discussion**

Elliott argues that the evidence is insufficient to show that he committed the alleged acts without Houseburg's consent.   We disagree.   While the record shows that Houseburg never expressly told Elliott that he did not consent to having Elliott penetrate his mouth or anus, Houseburg testified that during the sexual encounters with Elliott, he was "worried" that Elliott may have had a weapon and that he "didn't want" to commit the sexual acts.   Houseburg also testified that Elliott told him that he was going to "punish" him for insulting Helme.   The evidence also reveals that Elliott is physically larger in stature than Houseburg.   Houseburg testified that he is five-feet, three-inches tall, while Elliott is taller than six feet.   Houseburg also testified that he interpreted Elliott's comment to him that he "could have [taken] me out on the back road" as a threat to hurt him.   Finally, Houseburg testified that Elliott told him that he had a knife.   We acknowledge that Helme testified that she didn't "remember any abuse" or recall Houseburg telling Elliott to "stop it" or "quit it," but we defer to the jury to determine the weight and credibility to be given to Helme's contradictory testimony.   *See Brooks*, 323 S.W.3d at 899.

After considering all of the evidence in a light most favorable to the verdict, we conclude that a rational fact finder could have found that Elliott committed both counts of sexual assault beyond a reasonable doubt.   *See Winfrey*, 393 S.W.3d at 768.   Elliott's first issue is overruled.

7

## III. DISPROPORTIONATE PUNISHMENT

By his second and final issue, Elliott asserts that the eight-year punishments set by the trial court were disproportionate to the seriousness of the offenses in violation of the Eighth and Fourteenth Amendments to the United States Constitution. *See* U.S. CONST. amends. VIII, XIV.

As a threshold matter, the State argues that Elliott did not preserve his constitutional challenge to the trial court's sentences. *See Wilson v. State*, 311 S.W.3d 452, 473–74 (Tex. Crim. App. 2010) ("Preservation of error is a systemic requirement on appeal."). We agree.

To preserve an error for appellate review, a party must present a timely objection to the trial court, state the specific grounds for the objection, and obtain a ruling. *See* TEX. R. APP. P. 33.1(a). This rule applies to complaints about the disproportionality of a sentence imposed by the trial court. *See Smith v. State*, 821 S.W.2d 844, 855 (Tex. Crim. App. 1986) ("It is well settled that almost every right, constitutional and statutory, may be waived by the failure to object."); *Solis v. State*, 945 S.W.2d 300, 301 (Tex. App.—Houston 1997 [1st Dist.], pet. ref'd) (finding that appellant failed to object to the alleged disproportionality of the sentences thereby waived error for review).

Here, Elliott neither made an objection to the trial court's sentence during the punishment phase of his trial nor raised any such objection in a post-trial motion. As a result, we hold that Elliott's issue is not preserved for our review. *See* TEX. R. APP. P. 33.1(a); *Wilson*, 311 S.W.3d at 473–74. Elliott's second issue is overruled.

## IV.    CONCLUSION

We affirm the trial court's judgment.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
4th day of September, 2014.