# NOS. 12-18-00032-CR
# 12-18-00033-CR
# 12-18-00034-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *STEPHEN DUANE ROBERTS,* *APPELLANT* | § | *APPEALS FROM THE 3RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *HENDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Stephen Duane Roberts appeals his three convictions for manufacture or delivery of a controlled substance. In five issues, Appellant argues that the evidence is insufficient to support his convictions, the trial court erroneously admitted certain testimony and denied his motion for new trial, and the State committed prosecutorial misconduct and ***Brady*** violations. We affirm.

## BACKGROUND

Appellant was charged by indictment with manufacture or delivery of four or more but less than 200 grams of methamphetamine, one or more but less than four grams of cocaine, and one or more but less than four grams of alprazolam. He pleaded "not guilty," and the matter proceeded to a jury trial.

At trial, the evidence showed that Investigator Josh Rickman with the Henderson County Sheriff's Office obtained a warrant to search Appellant's home for narcotics. When deputies executed the search warrant, they first found Jason Donnell sitting on a couch by some drugs and paraphernalia. They then found Appellant in a bedroom with Elisha Jones. The first deputy to enter the room saw Appellant throw something that appeared to be a plastic baggie. Inside the

room, the deputies located a bag of marijuana on a dresser and a bag of methamphetamine on the bed behind Jones. A search of Appellant's person revealed a bag of marijuana and $656.00. A search of Jones's person revealed a grocery bag containing cocaine, ecstasy, alprazolam, other pills, and a large amount of methamphetamine. All three occupants were arrested and charged with offenses.

Ultimately, the jury found Appellant "guilty" of all charges. He pleaded "true" to two enhancement paragraphs, and the jury assessed his punishment at imprisonment for sixty years and a $5,000.00 fine in the methamphetamine case and imprisonment for twenty years and a $2,500.00 fine in the cocaine and alprazolam cases. This appeal followed.

## EVIDENTIARY SUFFICIENCY

In Appellant's first issue, he argues that the evidence he possessed the methamphetamine, cocaine, and alprazolam is insufficient to support his convictions. In Appellant's second issue, he argues that Jones's accomplice witness testimony was not corroborated by other evidence and the remaining evidence is insufficient to support his convictions.

### Standard of Review and Applicable Law

In reviewing the sufficiency of the evidence, the appellate court must determine whether, considering all the evidence in the light most favorable to the verdict, the trier of fact was rationally justified in finding guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Considering the evidence "in the light most favorable to the verdict" under this standard requires the reviewing court to defer to the trier of fact's credibility and weight determinations, because the trier of fact is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899; *see Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. A "court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor and can alone be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

2

To satisfy the elements of manufacture or delivery of a controlled substance as alleged in the first indictment, the State was required to prove that Appellant knowingly possessed with intent to deliver four or more but less than 200 grams of methamphetamine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d) (West 2017). To satisfy the elements as alleged in the second indictment, the State was required to prove that Appellant knowingly possessed with intent to deliver one or more but less than four grams of cocaine. *See id.* § 481.112(a), (c) (West 2017). To satisfy the elements as alleged in the third indictment, the State was required to prove that Appellant knowingly possessed with intent to deliver one or more but less than four grams of alprazolam. *See id.*

**Possession**

To prove unlawful possession of a controlled substance, the state must prove that the accused (1) exercised care, control, or management over the contraband and (2) knew the matter was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). This evidence, whether direct or circumstantial, must establish to the requisite level of confidence that the defendant's connection with the substance was more than merely fortuitous. *Id.* at 405-06. The defendant's mere presence at a place where the substance is possessed by others does not render him a joint possessor of the substance or party to the offense. *Martin v. State*, 753 S.W.2d 384, 387 (Tex. Crim. App. 1988). However, presence or proximity when combined with other evidence can establish possession. *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006).

A nonexclusive list of factors relevant to possession—or "affirmative links"—includes (1) the defendant's presence during the search, (2) whether the contraband was in plain view, (3) the contraband's proximity and accessibility to the defendant, (4) whether the defendant was under the influence of narcotics, (5) whether the defendant possessed other contraband, (6) whether the defendant made incriminating statements, (7) whether the defendant attempted to flee, (8) whether the defendant made furtive gestures, (9) whether there was an odor of contraband, (10) whether other contraband or drug paraphernalia was present, (11) whether the defendant owned or had the right to possess the place where the contraband was found, (12) whether the place where the drugs were found was enclosed, (13) whether the defendant was found with a large amount of cash, and (14) whether the conduct of the defendant indicated consciousness of guilt. *Id.* at 162 n.12. Possession is established not by a certain number of these links but by the logical force of all the evidence. *Id.* at 162.

3

Appellant argues that the possession evidence against him is insufficient because no witness saw the bag of methamphetamine land on the bed, Appellant was not charged as a party to the offenses, Jones's testimony was uncorroborated,[1] and there is no other evidence that he possessed the narcotics. We disagree.

Several factors link Appellant to the narcotics in this case. First, the evidence indicates that Appellant lived with his mother and brother at the house where the narcotics were found. Second, numerous plastic bags and scales of the sort commonly used to weigh narcotics were found in the house. Third, Appellant was present when the search was conducted. Fourth, Appellant was found in his bedroom with Jones, who had the bag of narcotics in her pants. Fifth, when the first deputy entered the room, he saw Appellant throw an object that appeared to be a plastic baggie. Sixth, bags of marijuana and methamphetamine were found in the room in plain sight. Seventh, Appellant told a deputy that he knew the narcotics were there and would take responsibility for them. Eighth, a bag of marijuana and $656.00 were found on Appellant's person.

Additionally, Jones testified that she met Appellant while looking for drugs. He sold her some heroin and methamphetamine, and they quickly developed a relationship in which he gave her drugs in exchange for sex. About six weeks later when the deputies arrived to execute the search warrant, Appellant threw Jones the bag of narcotics and told her to hide it in her pants.

We conclude the logical force of the evidence establishes that Appellant exercised care, control, or management over the contraband and knew the matter was contraband. *See Poindexter*, 153 S.W.3d at 405; *Evans*, 202 S.W.3d at 162. Therefore, the evidence is sufficient to show that Appellant possessed the methamphetamine, cocaine, and alprazolam. *See Poindexter*, 153 S.W.3d at 405. Accordingly, we overrule Appellant's first issue.

## Accomplice Witness Testimony

Under code of criminal procedure Article 38.14, "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). "Tendency to connect" is the standard, and the corroborating evidence need not be sufficient by itself to establish guilt. *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001). A witness is an accomplice

---

[1] We hold below that Jones's testimony was corroborated.

as a matter of law if that individual has been or could have been indicted for the same offense. *Cocke v. State*, 201 S.W.3d 744, 747-48 (Tex. Crim. App. 2006).

In this case, the record indicates that Jones was charged with the same offenses as Appellant. Therefore, she is an accomplice as a matter of law. *See id.* However, Jones's testimony is not uncorroborated as Appellant claims. As we noted above, besides Jones's testimony, the following factors also tend to connect Appellant to the offenses in this case: (1) Appellant lived at the house with his mother and brother, (2) numerous plastic bags and scales were found in the house, (3) Appellant was present when the search was conducted, (4) Appellant was found in his bedroom with Jones, who had the bag of narcotics in her pants, (5) a deputy saw Appellant throw an object that appeared to be a plastic baggie when he entered the room, (6) the deputies found a bag of methamphetamine and a bag of marijuana in the room in plain sight, (7) Appellant told a deputy that he knew the narcotics were there and would take responsibility for them, and (8) a bag of marijuana and $656.00 were found on Appellant's person.

Because Jones's testimony was corroborated by other evidence tending to connect Appellant with the offenses, the jury was justified in convicting him on her testimony. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14. Viewing all the evidence in the light most favorable to the jury's verdict, we conclude that the jury was rationally justified in finding, beyond a reasonable doubt, that Appellant committed the three offenses. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *see also Brooks*, 323 S.W.3d at 899; TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (c), (d). Accordingly, we overrule Appellant's second issue.

### PROSECUTORIAL MISCONDUCT AND *BRADY* VIOLATION

In Appellant's fourth issue, he argues that the State committed a *Brady* violation by failing to disclose an agreement with Jones and prosecutorial misconduct by allowing Jones to falsely testify regarding the agreement. In Appellant's third issue, he argues that the trial court erred by failing to exclude Jones's false testimony in violation of his due process rights.

### Applicable Law

The state's suppression of evidence favorable to the accused upon his request violates due process where the evidence is material to guilt or punishment, regardless of the state's good or bad faith. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97, 10 L. Ed. 2d 215 (1963). A defendant is denied his right to due process when his conviction is obtained through the state's

knowing use of false evidence. *See **Napue v. Illinois***, 360 U.S. 264, 269, 79 S. Ct. 1173, 1177, 3 L. Ed. 2d 1217 (1959). A due process violation may arise not only through false testimony specifically elicited by the state, but also by the state's failure to correct testimony it knows to be false. ***Ex parte Ghahremani***, 332 S.W.3d 470, 477 (Tex. Crim. App. 2011).

**Analysis**

Appellant's third and fourth issues are based on the following testimony:

PROSECUTOR: While you were in jail—and you're still in jail on these charges, is that right?

JONES: Yes, ma'am.

PROSECUTOR: Okay. And while you're in jail, did you reach out to the sheriff's office?

JONES: Yes, ma'am.

PROSECUTOR: And who did you reach out to?

JONES: The detectives.

PROSECUTOR: Was it Investigator Rickman?

JONES: Yes, ma'am.

PROSECUTOR: Why did you reach out to him?

JONES: Because I'm facing a lot of time, I needed help. I needed to let them know it wasn't me, it wasn't mine.

PROSECUTOR: And how did you reach out to him, did you write him a letter?

JONES: Yes, ma'am.

. . . .

PROSECUTOR: After you reached out to Investigator Rickman, did you talk to our office about wanting to testify against the Defendant?

JONES: Yes, ma'am.

PROSECUTOR: Okay. And why did you want to do that?

JONES: I'm hoping that it would lower my sentence. I don't know, I'm scared to death.

PROSECUTOR: What are you scared of?

JONES: Going to prison. I mean, my first offer was fifteen years. I'm not okay with that. I don't deserve to go to prison.

. . . .

6

PROSECUTOR: In that meeting, were there any type of offers made or promises made if you were to testify against the Defendant?

JONES: No, ma'am.

PROSECUTOR: Has there been any offer made as to your time being reduced if you testify against the Defendant?

JONES: No, ma'am.

PROSECUTOR: Has there been any type of offer that we would dismiss the charges against you if you testified against the Defendant?

JONES: No, ma'am.

PROSECUTOR: And in fact, there was a letter drafted between the district attorney's office and provided to your attorney, is that right?

JONES: I'm not sure.

PROSECUTOR: That's okay. Do you remember any type of letter that you signed?

JONES: Oh, yes. Yes, ma'am.

PROSECUTOR: Is State's Exhibit 53 in front of you, Elisha?

JONES: 52.

PROSECUTOR: Okay. Let me show you what's been marked as State's Exhibit 53. Why don't you look over this if you can and tell me if you recognize that?

JONES: Yes, ma'am.

PROSECUTOR: What is that?

JONES: It's my agreement to cooperate with the authorities.

PROSECUTOR: Okay. Is that something that you reviewed with your attorney on—in June of 2017?

JONES: Yes, ma'am.

PROSECUTOR: Okay. And contained within that letter does it indicate that you must testify truthfully?

JONES: Yes, ma'am.

PROSECUTOR: Does it also indicate that there have been no promises made, whatsoever, between our office and you?

JONES: Yes, ma'am.

. . . .

PROSECUTOR: Did you sign that letter?

JONES:                Yes, ma'am.

. . . .

DEFENSE COUNSEL:    [T]he DA asked you why is that you reached out to the sheriff's department and you said because I was looking at a lot of time, right?

JONES:                Yes, sir.

DEFENSE COUNSEL:    You're still looking at a lot of time, aren't you?

JONES:                Yes, sir.

DEFENSE COUNSEL:    Okay. You're looking at life in prison?

JONES:                Yes, sir.

DEFENSE COUNSEL:    And the reason you reached out to the sheriff's department wasn't because you needed help with a drug problem. Wasn't because you wanted to be a good citizen. The reason you reached out to them is because you're trying to cut a deal with these people, isn't that true?

JONES:                Yes, sir.

DEFENSE COUNSEL:    You trying to get as low a sentence as you can possibly get, and by testifying here today against Stephen Roberts, you're hoping that they'll recommend a lesser sentence for you, isn't that true?

JONES:                Yes, sir. I'm hoping they'll realize the truth.

DEFENSE COUNSEL:    Because at first I think you said they offered you fifteen years?

JONES:                Yes, sir.

DEFENSE COUNSEL:    That was their first offer?

JONES:                Yes, sir.

DEFENSE COUNSEL:    And you ain't going to take that?

JONES:                No, sir.

DEFENSE COUNSEL:    Okay. So you trying to get less than fifteen years, and hoping that if you say the right things, and testify against him, that they'll recommend maybe what, probation for you?

JONES:                Yes, sir.

DEFENSE COUNSEL:    Okay. I mean, your attorney's here today in the back of the courtroom; correct?

JONES:                Yes, sir.

DEFENSE COUNSEL:    And you obviously understand that you don't have to testify at all, because you've got pending criminal charges, right?

JONES:                Yes, sir.

DEFENSE COUNSEL:    But you and he are trying to work out the best possible deal with the DA's office, because you understand that it's these people that determine what your offer's going to be, right?

JONES:                        Yes, sir.

On appeal, Appellant argues this testimony shows Jones falsely testified that she had no agreement with the State.  He contends Jones's assertion that no offers or promises were made in exchange for her testimony contradicts her assertion that she contacted the authorities to try to obtain a sentence reduction, and that the State misrepresented its "deal" with Jones by eliciting this false testimony.  We disagree.  Nothing about Jones's contacting the authorities to try to obtain a sentence reduction contradicts the assertion that no offers or promises were made in exchange for her testimony.  Furthermore, even if we construe Jones's assertion that no offers or promises were made in exchange for her testimony as false or misleading, we cannot say that the State failed to correct it.  *See* **Napue**, 360 U.S. at 269, 79 S. Ct. at 1177; **Ex parte Ghahremani**, 332 S.W.3d at 477.  During the same line of questioning, the State elicited Jones's testimony that she contacted the authorities to try to obtain a sentence reduction.  Under these circumstances, we cannot conclude that Appellant was denied his right to due process by the State's knowing use of false evidence to obtain his conviction.  *See* **id.**  Accordingly, we overrule Appellant's fourth issue regarding the alleged prosecutorial misconduct.

Regarding Appellant's claim of a **Brady** violation based on the State's alleged failure to disclose its "deal" with Jones to the defense, we do not reach the claim's merits because Appellant failed to preserve this error for our review.  Preservation of error is a systemic requirement on appeal.  **Wilson v. State**, 311 S.W.3d 452, 473 (Tex. Crim. App. 2010).  It is the duty of the appellate courts to ensure that a claim is preserved in the trial court before addressing its merits.  *Id.*  In general, a claim is preserved for appellate review only if (1) the complaint was made to the trial court by a timely and specific request, objection, or motion and (2) the trial court either ruled on the request, objection, or motion, or refused to rule and the complaining party objected to that refusal.  TEX. R. APP. P. 33.1(a); **Geuder v. State**, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003).  If a party fails properly to object to errors at trial, even constitutional errors can be forfeited.  **Clark v. State**, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012).

When previously withheld evidence is disclosed at trial, a defendant's failure to request a continuance waives any **Brady** violation.  **Young v. State**, 183 S.W.3d 699, 706 (Tex. App.—Tyler

2005, pet. ref'd). Because Appellant did not object or request a continuance when Jones testified about her agreement to tell the truth, we conclude that any violation based on the State's alleged nondisclosure of that agreement is forfeited. *See id.*; TEX. R. APP. P. 33.1(a); *Clark*, 365 S.W.3d at 339. Accordingly, we overrule Appellant's fourth issue regarding the alleged *Brady* violation.

Similarly, we cannot grant Appellant relief based on the trial court's alleged error in "denying the exclusion of Elisha Jones' perjured testimony" because this error was not preserved for our review. Appellant did not request the exclusion of the allegedly perjured testimony or object to it at trial. We conclude that any error by the trial court in this regard has been forfeited. *See* TEX. R. APP. P. 33.1(a); *Clark*, 365 S.W.3d at 339. Accordingly, we overrule Appellant's third issue.

**MOTION FOR NEW TRIAL**

In Appellant's fifth issue, he argues that the trial court erred by denying his motion for new trial based on the State's failure to disclose the disciplinary history of one of the deputies who executed the search warrant.

**Standard of Review and Applicable Law**

A trial court has the authority to grant a new trial in the interest of justice. *State v. Herndon*, 215 S.W.3d 901, 906 (Tex. Crim. App. 2007). The legal grounds for which a trial court must grant a new trial are listed in rule of appellate procedure 21.3. *See* TEX. R. APP. P. 21.3. A trial court may grant a motion for new trial on other legal grounds as well. *Herndon*, 215 S.W.3d at 907. A trial court should not grant a motion for new trial if the defendant's substantial rights were not affected. *Id.* at 908. To establish a reversible *Brady* violation, a defendant must show that (1) the state failed to disclose evidence, (2) the withheld evidence is favorable to him, and (3) the evidence is material, meaning there is a reasonable probability that if the evidence was disclosed, the outcome of the trial would have been different. *Pena v. State*, 353 S.W.3d 797, 809 (Tex. Crim. App. 2011).

An appellate court reviews a trial court's denial of a motion for new trial for an abuse of discretion, reversing only if the trial judge's opinion was clearly erroneous and arbitrary. *Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012); *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006). A trial court abuses its discretion if no reasonable view of the record could support its ruling. *Riley*, 378 S.W.3d at 457. This requires the appellate court to view the evidence

10

in the light most favorable to the trial court's ruling. *Id.* The appellate court must not substitute its own judgment for that of the trial court and must uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Id.*

**Analysis**

After Appellant was convicted and sentenced in this case, he filed a motion for new trial based on a second alleged *Brady* violation that came to his attention after trial. At a hearing on the matter, the evidence showed that Investigator Brad Beddingfield, who assisted in the execution of the search warrant in this case, was previously the subject of an internal affairs investigation regarding his actions in another case.

Beddingfield testified that in the other case, he inadvertently obtained Judge Scott Williams's signature on a search warrant containing an incorrect description of and directions to the property and premises to be searched. When Beddingfield realized his mistake, he called Judge Williams to report it. Judge Williams told him that because the information was correct in the warrant's supporting affidavit, Beddingfield could correct it on the search warrant. However, because Beddingfield did not consider his handwriting legible, he used a computer to create a new search warrant with the correct information. He then discarded the incorrect warrant into the garbage, in violation of the sheriff's office policy of maintaining such documents in the case file.

When the internal affairs investigation was complete, the chief deputy determined that Beddingfield's actions constituted gross misconduct and dereliction of duty, Beddingfield was deceptive and negligent in his duties and actions, and Beddingfield would be moved from narcotics investigation to the patrol division as a result. Beddingfield appealed the findings to the sheriff, who agreed that Beddingfield violated the policy and was negligent in his actions but did not find that he was deceptive.

After the evidence was presented, Appellant's counsel argued that the trial court should grant Appellant a new trial because if defense counsel had known about Beddingfield's actions in the other case at the time of his trial, he could have attacked his credibility on that basis. In response, the State argued that the trial court should deny the motion because (1) the evidence of Beddingfield's actions was inadmissible under rule of evidence 404(b), and (2) the evidence against Appellant was so overwhelming even without Beddingfield's testimony that the admission of the evidence would not have altered the outcome of the trial. The trial court denied the motion.

Viewing the evidence in the light most favorable to the trial court's ruling, we cannot say that the trial judge's opinion was clearly erroneous and arbitrary. *See **Riley***, 378 S.W.3d at 457. The trial court could have reasonably found based on the evidence at trial and the hearing on the motion that Appellant's substantial rights were not affected by the State's failure to disclose Beddingfield's disciplinary history. *See **Herndon***, 215 S.W.3d at 908. First, the evidence of Beddingfield's history is not strong evidence that he lacks credibility. Although the evidence shows that he violated the sheriff's office's policy, there was no evidence that he harmed or intended to harm anyone by his actions. Furthermore, the final reviewer of Beddingfield's actions determined that deception was not involved. Under these circumstances, the evidence of Beddingfield's actions would not likely cause a jury to doubt his testimony.

Moreover, even if the evidence cast some doubt on Beddingfield's credibility, Beddingfield's testimony was only a portion of a large body of evidence against Appellant. Beddingfield testified to the facts that he found the money and marijuana on Appellant and Appellant told him he knew about the drugs in the house and would accept responsibility for them on Jones's behalf.[2] But other deputies testified about other incriminating facts, including that Appellant lived at the house with his mother and brother, they found numerous plastic bags and scales in the house, they found Appellant in the room where the narcotics were located, they saw Appellant throw an object that appeared to be a plastic baggie when they entered the room, they found bags of marijuana and methamphetamine in the room in plain sight, and they found the bag of narcotics in Jones's pants.

Additionally, Jones also testified to numerous facts incriminating Appellant. She said that she met Appellant while looking for drugs, and he sold her methamphetamine and heroin. They started a relationship in which Appellant gave Jones drugs in exchange for sex. Jones estimated that while she was living with Appellant, forty to fifty people came to the house daily. Although she stayed in Appellant's bedroom most of the time, she saw him exchange drugs, mostly methamphetamine, for money a handful of times. When the search warrant was executed, Appellant took the bag of narcotics from a cabinet, threw it at Jones, and told her to put it in her

---

[2] Beddingfield additionally testified about drug culture in general based on his experience as a narcotics investigator, but this testimony likely did little to strengthen the case. His testimony in this regard was either immaterial to the question of Appellant's guilt, such as the terms commonly used to describe people who have sex in exchange for drugs, or commonsense, such as the fact that such people do not tend to own large amounts of drugs at a given time.

pants. As the deputies entered, Jones saw Appellant reach in his pocket and throw something on the ground.

Based on our review of the record, we conclude that the trial court's ruling on the motion for new trial is within the zone of reasonable disagreement. *See Riley*, 378 S.W.3d at 457. The trial court could have reasonably concluded that although the State failed to disclose evidence that is arguably favorable to Appellant, there is no reasonable probability that the outcome of the trial would have been different had the evidence been disclosed. *See Pena*, 353 S.W.3d at 809. Accordingly, we overrule Appellant's fifth issue.

### DISPOSITION

Having overruled Appellant's first through fifth issues, we ***affirm*** the trial court's judgments.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered March 12, 2019.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

13



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MARCH 12, 2019**

**NO. 12-18-00032-CR**

**STEPHEN DUANE ROBERTS,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 3rd District Court
of Henderson County, Texas (Tr.Ct.No. CR17-0150-392)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MARCH 12, 2019**

**NO. 12-18-00033-CR**

**STEPHEN DUANE ROBERTS,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 3rd District Court

of Henderson County, Texas (Tr.Ct.No. CR17-0151-392)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MARCH 12, 2019**

**NO. 12-18-00034-CR**

**STEPHEN DUANE ROBERTS,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 3rd District Court
of Henderson County, Texas (Tr.Ct.No. CR17-0152-392)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*