**AFFIRMED and Opinion Filed May 7, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-23-00488-CR**

**No. 05-23-00491-CR**

**JACQUES DSHAWN SMITH, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 196th District Court**
**Hunt County, Texas**
**Trial Court Cause Nos. 34630CR; 36631CR**

## MEMORANDUM OPINION

Before Justices Garcia, Breedlove, and Kennedy
Opinion by Justice Breedlove

We withdraw the opinion of April 30, 2024. The following is now the opinion of this Court.

Jacques Dshawn Smith appeals his convictions for murder. Appellant pleaded guilty pursuant to a plea bargain and was sentenced to life imprisonment in Cause No. 34630CR and thirty-five years' imprisonment in Cause No. 34631CR. Appellant brings one issue on appeal contending the trial court erred by denying appellant's motion to suppress statements elicited in a custodial interrogation by law

enforcement. *See* TEX. R. APP. P. 25.2(a)(2)(A) (in plea-bargain case, a defendant may appeal "those matters that were raised by written motion filed and ruled on before trial"). Appellant asserts on appeal that he was prevented from making a knowing and voluntary waiver of his *Miranda* rights due to an intellectual disability. *See Miranda v. Arizona*, 384 U.S. 436 (1966); TEX. CODE CRIM. PROC. ANN. art. 38.22. We affirm the trial court's judgments.

## I.    BACKGROUND

On June 13, 2022, appellant filed a pretrial motion to suppress statements made to law enforcement during a custodial interrogation on the basis that appellant's Fifth Amendment rights were violated because appellant did not knowingly and intelligently waive his *Miranda* rights because of an intellectual disability.

On January 6, 2023, and January 20, 2023, the trial court conducted hearings on the suppression motion. Haley Blackwood, Ph.D. testified for appellant. Dr. Blackwood testified as an expert on individuals with disabilities and their ability to understand Miranda warnings. Dr. Blackwood tested appellant to determine, based upon appellant's specific intellectual disabilities, whether he would be capable of understanding oral and written *Miranda* warnings. Although Dr. Blackwood had testified before as an expert witness in other courts, she had not previously testified regarding a defendant's ability to comprehend *Miranda* warnings because the issue does not come up often. Dr. Blackwood further testified that to understand the oral

and written *Miranda* warnings administered to appellant in this case, one would need to have the ability to understand approximately an eighth grade level.

Dr. Blackwood testified that she had reviewed numerous records of appellant, including educational records and previous testing done on appellant. Dr. Blackwood affirmed that appellant has a longstanding history of an intellectual disability. She testified that the testing administered by her is the "gold standard" in determining a person's ability to understand *Miranda* warnings. Dr. Blackwood stated the purpose of the test was to evaluate appellant's "understanding of the nature of the right and the consequences being abandoned." After testing, Dr. Blackwood determined that appellant's reading and listening comprehension were approximately the level of a second grade child. Dr. Blackwood opined that given appellant's well-documented history of mental impairment, the manner the oral warnings were administered to appellant, the fact that the warnings require someone to have at least an eighth grade level of verbal and oral comprehension to fully understand them, that appellant did not possess the ability to knowingly and intelligently waive his rights.

During cross-examination by the State, Dr. Blackwood conceded that this testing protocol was fairly new, and she was not aware of any court having accepted this test. She also conceded that this was her first time to testify as an expert about this subject. Dr. Blackwood testified that appellant did have prior involvement with law enforcement, but that research suggested that prior experience with law

enforcement did not improve an individual's ability to comprehend *Miranda* warnings.

Dr. Blackwood reviewed the videos of the interrogation of appellant and admitted that during the questioning, appellant responded appropriately to the topic of discussion. At the conclusion of her testimony, Dr. Blackwood agreed to provide to the trial court and the State citations to the peer review studies that accept as valid the tests she administered to appellant.

The trial court continued the suppression hearing on January 20, 2023. The only witness to testify for the State was Ranger Chad Matlock. Matlock was the lead investigator on the murders for which appellant is accused. Matlock interviewed appellant on two separate occasions. Matlock testified that in both interviews, appellant responded appropriately to the questions asked and that Matlock never doubted that appellant understood what he was communicating and that appellant's responses to the questions were appropriate and logical. Matlock stated he has interviewed "a significant amount of people" during his career, has encountered defendants who did not appropriately respond to questions due to intoxication or mental defect, and that he never felt during questioning that appellant fell into one of those two categories. Matlock further testified that after he questioned appellant, detectives from Mississippi attempted to interview appellant and that appellant refused to speak with them.

On cross examination, Matlock admitted that during his interviews with appellant, he said more than once that he did not think appellant was understanding what he was saying. He admitted he has not had any training in identifying people with developmental disabilities. He also admitted that during his interview with appellant, appellant stated approximately thirteen times that he did not wish to speak with Matlock.

The trial court denied the suppression motion and issued findings of fact and conclusions of law on April 4, 2023. The trial court's findings of fact and conclusions of law signed April 3, 2023 included the following:

- The Defendant stated "I don't want to talk about that" when asked questions about an aggravated robbery.

- The Defendant was then asked questions regarding the instant offense.

- The Defendant answered preliminary questions regarding the instant offense without asserting his Miranda rights.

- The Defendant said several times during the February 5, 2020 interview that he did not want to talk about the instant offense, but continued to answer questions on other topics.

- The Defendant was again interviewed on February 7, 2020 by Ranger Matlock.

- The Defendant was again read his MirC1ndC1 rights by Ranger Matlock.

- The Defendant stated that he understood his Miranda rights.

- The Defendant then answered background questions without invoking his Miranda rights.

On May 18, 2023, appellant entered a plea of guilty in each case pursuant to a plea bargain. The trial court accepted the plea bargains and sentence appellant in accordance with the plea bargains. The trial court certified that appellant had the right to appeal from the denial of the suppression motion. On May 23, 2023, the trial court submitted additional findings of fact and conclusions of law on the suppression motion.

In one issue, appellant complains that the trial court erred and abused its discretion in denying the motion to suppress his statements to law enforcement due to his documented intellectual disability and inability to make a knowing and intelligent waiver of his *Miranda* rights. In response, the State argues that the law, both state and federal, does not support the position that just because someone has low IQ, they cannot make knowing and intelligent waivers of their *Miranda* rights. The State also argues that it presented ample evidence supporting the trial court's findings and conclusions that appellant made a knowing and intelligent waiver of his *Miranda* rights.

## II. STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *E.g., Pecina v. State*, 361 S.W.3d 68, 78–79 (Tex. Crim. App. 2012) (*citing Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). We afford almost total deference to the trial court's rulings on questions of fact and questions involving the application of law to fact that turn upon a witness's

credibility and demeanor. *Id.* at 79. We review de novo the trial court's rulings on pure questions of law and questions involving the application of law to facts that do not turn upon a witness's credibility and demeanor. *Id.* "As the sole trier of fact during a suppression hearing, a trial court may believe or disbelieve all or any part of a witness's testimony." *See State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013); *Wilson v. State*, 311 S.W.3d 452, 458 (Tex. Crim. App. 2010). An appellate court examines the evidence in the light most favorable to the trial court's ruling. *See id.* A trial court will abuse its discretion only if it refuses to suppress evidence that is obtained in violation of the law and that is inadmissible under Texas Code of Criminal Procedure article 38.23. *See id.*

When, as here, the trial court has made express findings of fact, an appellate court views the evidence in the light most favorable to those findings and determines whether the evidence supports the fact findings. *See State v. Rodriguez*, 521 S.W.3d 1, 8 (Tex. Crim. App. 2017); *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). "We will sustain the trial court's ruling if that ruling is 'reasonably supported by the record and is correct on any theory of law applicable to the case.'" *Valtierra*, 310 S.W.3d at 447–48.

### III. APPLICABLE LAW

The United States Constitution's Fifth Amendment provides suspects in custody a privilege against self-incrimination and a right to interrogation counsel. *Pecina*, 361 S.W.3d at 74–75. *Miranda* and article 38.22 require that a defendant be

given specific warnings in order for statements resulting from custodial interrogation to be admissible. *See Miranda*, 384 U.S. at 458; TEX. CODE CRIM. PROC. ANN. art. 38.22. The purpose of *Miranda* warnings is to "guard against abridgement of the suspect's Fifth Amendment rights." *McCambridge v. State*, 712 S.W.2d 499, 506 (Tex. Crim. App. 1986). Article 38.22 section 3 provides that an oral statement is admissible against a defendant in a criminal proceeding if, among other things, (1) the statement was electronically recorded; (2) the defendant was given the warnings set out in article 38.22 section 2(a) prior to the statement but during the recording; and (3) the defendant "knowingly, intelligently, and voluntarily" waived the rights set out in the warnings. TEX. CODE CRIM. PROC. ANN. art. 38.22 § 3(a). "The warnings provided in Section 2(a) are virtually identical to the *Miranda* warnings, with one exception—the warning that an accused 'has the right to terminate the interview at any time' as set out in Section 2(a)(5) is not required by *Miranda*." *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007) (citations omitted); *see also Wilkerson v. State*, 173 S.W.3d 521, 527 n.14 (Tex. Crim. App. 2005) (observing that article 38.22 "requires a slightly more elaborate set of warnings than Miranda and adds the requirements of either a written, signed statement or an audio or video recording of custodial interrogations by law enforcement").

The State bears the burden of showing by a preponderance of the evidence that a defendant knowingly, intelligently, and voluntarily waived his rights under

*Miranda* and article 38.22. *Leza v. State*, 351 S.W.3d 344, 349, 351 (Tex. Crim. App. 2011); *Joseph v. State*, 309 S.W.3d 20, 24 (Tex. Crim. App. 2010). In determining whether a valid waiver occurred, we consider whether (1) the relinquishment of the right was voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception; and (2) the waiver was made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. *Joseph*, 309 S.W.3d at 25. Only if the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that a defendant waived his rights. *Id*. The "totality-of-the-circumstances approach" requires the consideration of "all the circumstances surrounding the interrogation," including the defendant's experience, background, and conduct. *Id*.

While not alone determinative, evidence of mental impairment is a factor to be considered by the factfinder in evaluating voluntariness. *Oursbourn v. State*, 259 S.W.3d 159, 173 (Tex. Crim. App. 2008); *Umana v. State*, 447 S.W.3d 346, 350 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). A confession is involuntary if the totality of the circumstances demonstrate that the confessor did not make the decision to confess of his own free will. *Id.* at 351.

## IV. DISCUSSION

Appellant asserts that his waiver of *Miranda* rights was not knowing and voluntary because he was limited by his intellectual disability. Although appellant's

motion to suppress alleged that the officers engaged in "forms of behavior akin to bribery," appellant does not argue on appeal that his waiver was involuntary due to coercive police conduct. Thus, appellant's contention that his *Miranda* and/or Due Process rights were violated is foreclosed. A confession is involuntary "only when there is police overreaching." *Oursbourn*, 259 S.W.3d at 169; *Umana*, 447 S.W.3d at 350. "Absent police misconduct causally related to the confession, there is no deprivation of due process of law by a state actor and therefore no violation of the Due Process Clause." *Cevantes-Guervara v. State*, 532 S.W.3d 827, 833 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (citing *Oursbourn*, 259 S.W.3d at 170; *Umana*, 447 S.W.3d at 350). Likewise, *Miranda* protects against government coercion to surrender Fifth Amendment rights. *Oursbourn*, 259 S.W.3d at 170; *Umana*, 447 S.W.3d at 350. However, even if appellant had argued the issue of coercion on appeal, the record before us is devoid of any evidence of police coercion.

Unlike a claim of involuntariness under *Miranda*, appellant's claim that his waiver of rights under article 38.22 was involuntary need not be predicated on evidence of police overreaching. *See Leza*, 351 S.W.3d at 352. Under the totality of the circumstances test, many factors, including intellectual disability, may be relevant in determining whether a defendant's waiver of rights under Article 38.22 was voluntary—the product of his free and deliberate choice. *See Oursbourn*, 259 S.W.3d at 172–73; *Williams v. State*, 502 S.W.3d 262, 272 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). "[T]he waiver must be made with a full awareness both

–10–

of the nature of the right being abandoned and the consequences of the decision to abandon it." *Leza*, 351 S.W.3d at 349 (internal citations omitted).

The question is whether the accused's mental impairment is so severe that he is incapable of understanding the meaning and effect of his confession. *See Casias v. State*, 452 S.W.2d 483, 488 (Tex. Crim. App. 1970). A defendant's mental condition, by itself and apart from its relation to official coercion, will never require a conclusion of involuntariness. *See Colorado v. Connelly*, 479 U.S. 157, 164 (1986). Thus, while not alone determinative, mental impairment or intellectual disability is a factor in ascertaining the voluntariness of a confession. *See Penry v. State*, 903 S.W.2d 715, 744 (Tex. Crim. App. 1995).

It is undisputed that Matlock advised appellant of his *Miranda* and statutory rights. Appellant expressly waives his rights on the video recording. It also is undisputed that during the recording, appellant makes incriminating statements regarding his role in various crimes.

At the suppression hearing, Dr. Blackwood testified as to appellant's mental impairment. She discussed the results of her testing of appellant and opined that appellant's reading and listening comprehension were approximately the level of a second grade child.[1]

---

[1] In his brief, appellant argues this Court should hold the trial court erred in refusing to accept Dr. Blackwood's assessment based on her testing because the State offered no competing evidence, regardless of the fact that no other courts have yet accepted the methodology used by Dr. Blackwood to determine appellant's comprehension skills. However, because the trial court, as the finder of fact, is the sole judge of

Appellant's evidence does not establish a mental impairment so severe that he was incapable of understanding the meaning and effect of his confession. The court of criminal appeals has routinely upheld the voluntariness of confessions given by defendants with mental deficiencies more severe than those of appellant. *See Penry*, 903 S.W.2d at 746 (admitting confession of mentally retarded defendant who could not read or write and had IQ ranging from forties to seventies); *Casias*, 452 S.W.2d at 488 (admitting confession of mentally retarded defendant who could not read or write and had IQ of 68 and mental age of eight to ten years). Here, there was evidence from Matlock that appellant appeared to understand and respond appropriately, evidence that appellant actually exercised his right to remain silent in at least one other case, and the trial court's own ability to observe the demeanor and responses of appellant. Further, appellant never testified that he had any issues understanding his rights. Aside from the testimony of Dr. Blackwood that suggested that appellant's comprehension level was below that of the level required to understand the *Miranda* warnings, appellant provides no evidence that he did not understand the meaning of the warnings and the effect of his confession.

Appellant's counsel presents the argument that because Dr. Blackwood opined that appellant has the oral and reading comprehension skills of a child whose age would preclude criminal prosecution under the laws of this state that he should

the witnesses' credibility, we need not determine whether the trial court erred in failing to accept Dr. Blackwood's methodology. See *Kerwick*, 393 S.W.3d at 273; *Wilson*, 311 S.W.3d at 458.

be found incapable of knowingly and intelligently waiving his *Miranda* rights. This argument is problematic for several reasons. Even if the court were to accept as true Dr. Blackwood's opinion, a person's reading and listening comprehension skill level is no indication of one's actual maturity or knowledge, especially when considering a person's prior encounters with law enforcement, a fact that the trial court was permitted to consider. *Joseph*, 309 S.W.3d at 25. Appellant has provided no case law, and this Court has found none, that would require courts to treat adult offenders with comprehension deficits as if they were juveniles.

We conclude the trial court did not abuse its discretion in denying appellant's motion to suppress as there is support in the record for the trial court's determinations of voluntariness. We must give deference to the trial court's factual finding that appellant's waiver of his rights during the recorded statement was the "free will" or "free choice" of appellant. The evidence does not reflect any overreaching or misconduct on the part of the police, and appellant does not argue that any occurred. *See Umana*, 447 S.W.3d at 356. The evidence shows that Matlock advised appellant of his *Miranda* rights and article 38.22 statutory rights; appellant had the basic reasoning skills to understand them, and voluntarily waived them; appellant did not give any indication that his educational background or mental capabilities prevented him from understanding Matlock's questions.

Accordingly, we conclude the totality of the circumstances here support the trial court's determination that any alleged mental impairment of appellant did not

render him incapable of understanding the meaning and effect of his waiver and confession and, thus, that both were voluntarily made. See *Umana*, 447 S.W.3d at 351. Accordingly, we conclude that the trial court did not err in denying appellant's motion to suppress and admitting appellant's recorded statement.

## V. CONCLUSION

We affirm the trial court's judgments.

/Maricela Breedlove/
MARICELA BREEDLOVE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

230488F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

JACQUES DSHAWN SMITH,
Appellant

No. 05-23-00488-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 196th District
Court, Hunt County, Texas
Trial Court Cause No. 34630CR.
Opinion delivered by Justice
Breedlove. Justices Garcia and
Kennedy participating.

We **VACATE** the judgment of April 30, 2024.  The following is now the judgment of the Court. Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered May 7, 2024



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JACQUES DSHAWN SMITH,
Appellant

No. 05-23-00491-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 196th District
Court, Hunt County, Texas
Trial Court Cause No. 34631CR.
Opinion delivered by Justice
Breedlove. Justices Garcia and
Kennedy participating.

We **VACATE** the judgment of April 30, 2024.  The following is now the judgment of the Court. Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered May 7, 2024